## The Singer Mfg. Co. v. Mary Ellington.

1. Sales—*Subterfuge to Call Sale a Lease.*—It is a mere subterfuge to call a transaction a lease, for the purpose of giving the vendor a lien on the thing sold until payment in full of the purchase money, and the application of that term in the written agreement between the parties, does not change its real character.

2. Same—*Distinguished from Bailment.*—When the identical thing is to be restored in the same or an altered form, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to return the specific article and the receiver is at liberty to return another thing of equal value, or the money value, he becomes a debtor to return, and the title to the property is changed; it is a sale.

Assumpsit.—Appeal from the City Court of East St. Louis; the Hon. Silas Cook, Judge presiding. Heard in this court at the February term, 1902. Affirmed. Opinion filed September 11, 1902.

Alexander Flannigen, attorney for appellant.

F. C. Smith, attorney for appellee.

Mr. Justice Worthington delivered the opinion of the court.

Suit commenced before a justice, where judgment for $45 was rendered in favor of plaintiff, from which judgment the defendant appealed to the Circuit Court of St. Clair County. By agreement, the venue was changed to the City Court of East St. Louis, where judgment for $45 was again rendered for plaintiff, from which judgment defendant appeals.

The suit is to recover $45 paid in installments by appellee to appellant for a sewing machine, which appellee received under a written agreement, in substance as follows:

" This certifies that I, Mary Ellington, have rented and received from the Singer Manufacturing Company, one Singer sewing machine, style V. S. 5 Dr. Oak, and No. 13,748,259, with apparatus belonging thereto, all in good order and valued at $60 dollars, which I am to use with care, and keep in good order, and for the use of which I

agree to pay rent as follows: $20, consisting in $5 cash, $15 old White on the delivery of this agreement, the receipt whereof is hereby acknowledged, and accepted as payment for the rent of the first month only, and then at the rate of $3.per month thereafter, for sixteen months, at its agency in East St. Louis, without notice or demand.

But if default shall be made in either of said payments, or if I shall sell or offer to sell, remove or attempt to remove, the said machine from my aforesaid residence without the written consent of the said Singer Manufacturing Company, then and in that case, or' at the expiration of the time for which the machine is rented, I will return and deliver the same to the Singer Manufacturing Company in good order, save reasonable wear, and the said company or its agents may resume actual possession thereof; and I hereby authorize and empower the said Singer Manufacturing Company, or its agents, to enter the premises wherever said machine may be, and take and carry the same away, hereby waiving any action for trespass or damage therefor and disclaiming any right of resistance thereto; and also waive all right of homestead and other exemptions, under the laws of said state, as against this obligation.

Witness my hand and seal this fifth day of December, 1896.

                    MARY ELLINGTON.    [SEAL.] "

Appellee gave in evidence, without objection, the conversation with Craig, the agent of appellant, which led up to and induced the making of this contract. Her testimony was not contradicted, nor was that part stricken out which referred to what was said before the contract was signed. When this conversation was about being detailed by Dan Ellington, who was called after appellee testified, objection was made by defendant's counsel to his stating what was said, and the objection was sustained.

Counsel for defendant then moved as follows:

" I want to make this further motion; that the court exclude from the jury all the testimony of Mrs. Ellington and this boy, tending to change or vary, later on, the terms of the lease, or written contract, on the ground that all subsequent parol agreements are inadmissible for the purpose of contradicting a contract under seal. This lease is under seal, and I make that objection.

"The Court: The objection will be sustained so far as

it will apply to anything that will undertake to change the conditions of the contract, but it will be overruled so far as any evidence is concerned showing a waiver of it by the company."

It will be observed that the motion was only to exclude testimony "tending to change *later on* the terms of the lease or written contract on the ground that all *subsequent parol* agreements are inadmissible for the purpose of contradicting a contract under seal," and to this extent the motion was sustained.

This leaves for our consideration, all the testimony of appellee as to what was said or done before the execution of the contract.

Appellee testifies in substance :

" Craig came and asked me if we wanted a machine. Said he was one of the managers of the company; that Mrs. Kent sent him to me to buy a machine; I told him that I was not ready; I had just buried my son and could not afford it; he said for me to buy it and there would be no trouble; I could put in my old machine and they would give me ample time; this was about the fifth of December. He sold me a machine, $5 down, $15 for my old machine, and I was to pay $3 a month, if I had it, and if I did not have it, he would take less. I told him not to take my old machine until I was ready to pay the $5; he said there would be no bother about it. He took the old machine that day and brought the new machine into my house. I told him I did not have the money to pay down on it; he said, when would I have it? I said I did not know how soon; he said he would wait until February, would that do? I told him yes, I would have the money in February. He brought me a paper for me to sign. I supposed it was a bill of sale. I signed it and he took it with him."

In cross-examination, appellee testified :

" When I signed the paper it was this way; it was folded; and he laid it down for me to sign my name. It never was opened out at all; when I wrote my name at the bottom he folded it again; he turned it over one time like that, and laid it down; it was folded when he brought it; he laid it down for me to sign my name. I signed it and he turned it over and told me to sign again. He did not open it up. He told me it was a bill of sale."

This testimony is important as throwing light upon the true construction of the written contract in evidence. To the same effect is the testimony of Mrs. Kent, as follows:

"I was the one that had the agent bring the machine to Mrs. Ellington. I wrote the company if I could sell a machine would they give me five dollars. I told them if they agreed, to send their agent out to Mrs. Ellington. At that time she was willing to take the machine. They sent an agent out about two days after."

This evidence tends to prove a sale and not a lease. It shows that appellee thought she was buying a machine, not leasing one, and that the agent of appellee so represented.

If the uncontradicted testimony of appellee 'is true, the agent of appellant perpetrated a fraud in securing her signature to a folded paper which is a lease in form, giving her in terms no right or title to the machine when all the payments were made, and telling her that it was a bill of sale. But outside of this testimony, we think that an examination of the written instrument itself, warrants the construction that it represents a conditional sale and not a lease. It is not reasonable that $20 should be paid in advance as the rent of a sewing machine for the first month, and that $3 rent monthly should be paid thereafter until $60 in all was paid, with no provision as to whose machine it should then be, or what should be done with it, when the statement of the agent before the contract was signed, was to the effect that the selling price of the machine was $60.

In the case of Murch v. Wright, 46 Ill. 487, there is a contract for the leasing of a piano at $50 a month, similar to the one in evidence, except that there is in it a provision that the lessee might purchase if he so desired, when he had paid installments amounting to $700. Mr. Justice Lawrence in the opinion says:

"We entertain no doubt that the transaction was, in fact, a sale of the piano, though made to assume the form of a lease for the purpose of giving the vendor a lien on the instrument until payment in full of the purchase money. The mere statement of the facts show this. * * * It was a mere subterfuge to call this transaction a lease, and

the application of that term in the written agreement between the parties does not change its real character."

To the same effect are Lucas v. Campbell, 88 Ill. 447; The Howe Machine Co. v. Willie, 85 Ill. 333; Latham v. Sumner, 89 Ill. 233. In Gilbert v. Gere, 67 Ill. App. 592, in commenting upon an agreement purporting to be a lease, the court say:

" Reading between the lines, as the Supreme Court did in Murch v. Wright, 46 Ill. 487, and Lucas v. Campbell, 88 Ill. 447, it is apparent that the intention of the appellee and the Bermel Company was that the latter should acquire the property of the former upon terms of payment which they had agreed upon.

" When the identical thing is to be restored in the same or an altered form, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to return the specific article and the receiver is at liberty to return another thing of equal value, or the money value, he becomes a debtor to return, and the title of the property is changed; it is a sale. Bastress v. Chickering, 18 Ill. App. 207, Ibid., 130 Ill. 206; Lonergan v. Stewart, 55 Ill. 49; Richardson v. Olmstead, 74 Ill. 213.

Under repeated decisions in our state, such a transaction would be an absolute sale, as to attaching creditors, but a conditional sale as between the parties. If our construction of the written contract is correct, appellant could reclaim the machine if appellee made default, but if she made all the payments the machine would become her property absolutely. By the terms of the contract she was obligated to pay sixty dollars. Appellant could waive his right to retake the machine, and rely upon a collection of the money.

The next question then is, appellant having elected to retake the property, what claim, if any, has appellee to the money she has already paid? There is no provision in the contract with reference to this, and there is no clause forfeiting payments made, in case of default. We are cited to no case which definitely answers this question. Latham v. Sumner, *supra*, was a case where a piano was sold for $480, and $80 paid on it, and four notes for $100 each, given for

the remainder. It is said in the opinion, "there seems to have been an effort to give this sale the form of a lease of the instrument, but the whole contract considered, it must be regarded as a sale." The first note not being paid, a demand was made for the piano, and then an agreement arrived at by which the piano was surrendered and the notes returned. Suit was afterward brought to recover what had been paid on the piano. In deciding this case it is said:

" It is urged that appellee could not rescind the contract without placing appellant in *statu quo*, and failing to do so, is liable for all payments made to him on the contract. Appellant failing to make payment according to the condition of the notes, should have returned the instrument, and appellant only exercised his undoubted right in resuming possession. He violated no contract or legal right of appellant when he took the piano, and not only so, but it was with the consent of appellant; nor was there any agreement to refund payments already made. We are therefore at a loss to see that appellee declared a rescission, because he acted under the agreement itself, as well as by mutual consent of the parties. Had appellant refused to cancel the agreement and to restore the property, and appellee had taken it, then a question might have arisen as to a rescission and its consequences."

The opinion then goes on to state that appellee could recoup, in case of suit for payments made for use of instrument, etc., and states:

" If it were conceded, then, that appellant has a legal claim to demand the payment made on the contract, appellee has an equal right to claim for the use of the instrument or its depreciation by being used by appellant. These items, from the evidence, exceed the payments, and hence must defeat a recovery."

This case, then, does not decide that a suit to recover payments can in no instance be maintained, but rather tends to the opposite view. In the case at bar there was a rescission of the contract by appellant to which appellee objected, and offered to pay the balance due.

Fairbanks v. Malloy, 16 Ill. App. 278, decides only that under a conditional sale and default made, recovery of

payments made, can not be had in a replevin suit brought by vendor to retake the property for condition broken. It is said in this case :

"We think the plaintiff below was entitled to recover the possession of the property, according to the terms of the contract, without first tendering the money paid. In such cases it may be, that by reason of a breach of warranty, or other causes, the purchaser would have a just demand for the return of all or part of the purchase money, but the action of replevin is not an appropriate proceeding in which to determine a question of that sort, and the judgment for plaintiff thereon does not preclude the purchaser from a suit for that purpose."

This case recognizes the right to recover payments made for "breach of warranty or other causes."

We think that causes are shown by the evidence in the case at bar that gave a right of recovery of payments made, less whatever, if anything, is shown for depreciation in the value of the property or for its use. In the first place, appellee was induced to sign what is in form of a lease, upon the representation by an agent of appellant, that it was a bill of sale, the paper being folded and not read to her, or by her, and its character falsely represented to her.

In the second place, the cash payment of $5 was not required when the sale was consummated, but was deferred for two months, in accordance with the promise made and inducement held out by the agent at the time of making the sale. It is also in evidence, that subsequent payments were made after they were due, until $45 had been received by appellant, thus leading appellee to believe that appellant waived prompt payments and would not enforce its lien by taking the machine from her upon a subsequent default. Payments had been made as follows: April 4, 1897, $3; June 30, 1897, $3; October 6, 1897, $3; February 1, 1898, $3; May 5, 1898, $3; July 14, 1898, $3; October 11, 1898, $3; November 19, 1898, $3; February 4, 1899, $3.

On the 13th of July, 1899, appellant replevied the machine. Appellee made no defense and appellant took

the machine and kept it. When the writ of replevin was served, appellee was sick, having given birth to a child a few days before. An agent of appellant came with the constable. It is in evidence, and is uncontradicted, that appellee said to the officer, " I only owe $15, and I will go out and get the money for you;" and that he replied, " Oh, to hell with your money; I don't care if you don't owe me a dollar; it is the machine I want."

It is in evidence, when appellee " begged " the officer to leave the machine, as she testifies, that he beckoned to the agent who was with the wagon, to come in, and that he came in, and that he heard most of the conversation. From this evidence the jury may well have believed that appellee would have paid the $15 if the agent of appellant had been willing to receive it. If this is so, it was a rescission of the contract by appellant when appellee was willing and offered to complete it.

In Bastian v. Clifford, 68 Ill. 67, five conditions are stated in which a vendee may recover payments made when a contract is rescinded. One of these is, " When the vendor has been guilty of fraud in making the contract." It also states the condition under which the vendee can not recover payments made as follows: " But when the vendor is in no default and is ready and willing to perform the contract on his part, the vendee can not recover back money paid by him on the contract."

As we read the evidence in the case at bar, appellant was guilty of fraud in securing a contract, in form a lease, when representing it to be a bill of sale. Appellant also waived defaults in payment when due, receiving them when made long after due, until three-fourths of the price agreed upon was paid, and then refused to receive the balance of $15, when appellee offered to pay it, and insisted upon taking the property.

If it is said that the officer was not authorized to receive the money, it may be replied, that the evidence shows that he beckoned to the agent of appellant, who came in, and who heard " the most of the conversation."

If it is said that the money was not actually tendered, it may be replied that to the statement by appellee that she would go and borrow the money and pay it, the reply of the officer was that "he didn't want the money, he wanted the machine."

Contracts of the kind in evidence, are intended to secure the vendor for the purchase money. They should not be construed so as to give the vendor both the property and money received for it, unless so expressly stipulated, or, unless the facts in the case disclose no wrongful act in the vendor, and no grounds for relief in the vendee.

It would be a monstrous doctrine to hold in these days, when sales on the installment plan are so frequent, that a vendor, after having imposed a lease upon a vendee, by falsely representing it to be a bill of sale, and after acquiescing in numerous defaults in payments when due, and accepting them afterward, can collect all but a trifling balance, and then when the vendee proffers payment of the balance, refuse it, and retake the property and keep it and the money also.

We do not understand that the decision of any court goes to this extent, and it will require a very clear decision of a superior court to induce us to so hold.

Judgment affirmed.