DON MEEKER, d/b/a Meeker's of Hidalgo, Plaintiff-Appellant, *v.* NELSON FOWLER *et al.*, Defendants-Appellees.

Fifth District No. 75-97

Opinion filed January 21, 1976.

William E. Aulgur, of Eldorado, for appellant.

Conger & Elliot, of Carmi, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

This was a suit brought by the plaintiff to recover a balance owed on a promissory note executed by the defendants. Judgment was entered against defendants by confession for $15,000 principal, $1859.37 interest and $4298.17 attorney's fee, a total of $21,157.54. Thereafter, defendants filed a motion to open the judgment and an answer to the complaint in which they sought affirmative relief. The motion was granted, the judgment by confession was set aside and defendants' answer filed. Following trial on the merits the court entered judgment in favor of plaintiff in the amount of $8,820. Plaintiff appeals.

In 1965 the defendants obtained from the plaintiff dealer two grain bins. In connection with the transaction two instruments were executed, a purchase agreement dated June 26, 1965, and a lease agreement dated January ——, 1965. Testimony indicated, however, that these instruments were executed at the same time despite the difference in dates.

The cost of the bins as listed in the purchase agreement was $12,390 to be paid in five annual installments of $2,990, falling due on October 1. Ninety dollars was paid down, leaving $2,900 due on the first installment for October 1, 1965. The lease agreement covering this same transaction states that the rental for these bins shall be $14,350 with $3,190 payable on or before October 1, 1965, the balance to be paid in four annual installments of $2,790, each falling due on October 1. Nothing in the testimony or in the record explains the difference in amounts between the two agreements. Though the purchase agreement was signed by both parties, it should be noted that the copy of the lease agreement retained by plaintiff was signed only by the defendants and the copy given to the defendants was signed only by the plaintiff.

On January 29, 1968, defendants purchased another grain bin. Again a purchase agreement and a least agreement were signed, both dated January 29, 1968. The purchase agreement listed the price as $6,495 with

an additional $190, apparently to cover higher horse power fans requested by the purchaser. The purchase agreement provided for a down payment of $95 with a balance of $1,590 to be due on July 1, the remainder of the purchase price to be paid in four installments due on July 1 of the succeeding four years in an amount of $1,595 per installment. The lease agreement covering this same transaction stated that the total rental for the term was $7,975 with $1,595 due on July 1, 1968, the balance to be paid in four annual payments of $1,595, falling due on July 1 of each succeeding year. It acknowledged that $95 had been paid down.

Defendants also purchased from plaintiff some additional items on open account.

On June 9, 1969, at which time defendants were delinquent in their payments under both transactions—that is, the two bins purchased in 1965 and the bin purchased in 1968—defendant Nelson Fowler met plaintiff Don Meeker at which time they agreed on the total amount due. Whether or not the total agreed upon represented all of the indebtedness of defendants under both contracts and the open account is one of the issues in this case. At this meeting, however, a sum of $17,357.56 was agreed upon as being due. Defendants executed a note for $15,000 and gave plaintiff a check for $2,357.56. It was on this note that confession judgment was rendered on November 8, 1973, following which defendants filed a motion to open the judgment and permit the filing of an affirmative answer seeking relief.

In the bench trial which followed, the court ruled that the note and and check constituted an account stated settling all accounts between the parties on both contracts and that after deducting amounts paid by the defendants and a penalty for failure to comply with the Illinois Retail Installment Sales Act (Ill. Rev. Stat., ch. 121½, § 501 et seq.), the balance due was $8,820 plus interest and costs. The court also ruled that defendants were owners of the bins.

There are two issues to be considered on this appeal, (1) was the payment agreed to on June 9, 1969, in settlement of all accounts between the parties or in settlement only of the obligation under the first contract plus certain open accounts; and (2) were these transactions sales of the bins, as contended by defendants, or only leases, as contended by the plaintiff?

■■ While the parties agree that the check and note given on June 9, 1969, were for an account stated, they do not agree on what obligations of the defendants were covered by the note and check. Plaintiff claims that only indebtedness connected with the first contract plus certain open account items are included, whereas defendants claim that all of their

indebtedness under both contracts and under their open accounts are included and that the note and check were a complete substitute for all of these obligations. The trial court chose to adopt the defendants' contention and hold that the note and check were in substitution for all previous indebtedness. In view of the record, we are not disposed to disturb this finding.

Not only were the circumstances surrounding the transactions such as to make this a reasonable conclusion, but the testimony of both parties indicates that this was the intent. Defendant Nelson Fowler testified that this was his understanding of the transaction and plaintiff in paragraph 4 of his sworn reply of July 11, 1975, states *inter alia:*

> "* * * for further answer unto paragraph 7. Plaintiff also states that on said date of June 9, 1969 an account stated was made and entered into by and between the plaintiff and the defendant Nelson Fowler whereby they did make an agreement as to the correctness of the accounts which represented their prior monetary transactions, upon which occasion a balance was struck and agreed upon by them * * *."

Thus we do not find that the trial court's finding was against the manifest weight of the evidence.

It should be noted that the date on which an account stated was arrived at and on which the note and check were executed was after defendant had become delinquent under both contracts. And section 11 in both lease agreements states that "In the event of any default in making any rental payment hereunder * * ₀ * all remaining rental payments hereunder shall at the lessor's option become due and payable forthwith." This, coupled with the plaintiff's own statement that the account stated represented an agreement as to the correctness "of the accounts which represented their prior monetary transactions," could reasonably have induced the trial court to rule as it did despite plaintiff's contention that this was not in settlement of all accounts.

Plaintiff cites several cases in support of the view that an account stated does not supersede the amounts to be shown due under contracts between the parties. However, none of these cases square with the situation in the instant case. In *Jucker v. Crowe,* 241 Ill.App. 420, no note had been given and the evidence tended to show that there was in fact no agreement on an account stated. In *Bennett v. Potter* (1919), 180 Cal. 736, 183 P. 156, a partition of land and an accounting were involved. Here again there was no written instrument of any kind giving evidence of an agreement on an account stated and the issue was in fact whether there had been an account stated. In *Beebe v. Smith,* 194 Ill. 634, 62 N.E. 856, defendant gave his father-in-law a note for $6,235.

Later he claimed this covered $2,000 which he had borrowed to purchase corn. But in this separate contract it was agreed that the $2,000 would not be due until the corn had been sold. At the time of the settlement the corn had not been sold and there was nothing in their agreement which would accelerate the obligation. We see no reason here that would cause us to deviate from the general principle that an account stated is deemed conclusive at law and in equity unless fraud, omission or mistake are shown. *Wood v. Davis,* 2 Ill.App.3d 550, 276 N.E.2d 756; *Brown v. Gill,* 343 Ill.App. 460, 99 N.E.2d 393.

Plaintiff contends that the agreements used in these transactions constituted a lease only of the bins; defendant claims that they established an installment sales contract. The trial court found for the defendants on this issue, a result with which we agree.

Two documents were involved—a "purchase agreement" and a "lease agreement." The purchase agreement states, among other things, that "* * * seller hereby agrees to *sell* to Nelson Fowler, Eldorado *purchaser,* and said *purchaser* hereby agrees to *purchase* from seller the following equipment and services * * *." (Emphasis added.) It incorporates the lease as the method of payment by stating "That the purchaser shall pay the Total Price herein in the sum of $5-year lease to Seller." Paragraph 7 of the purchase agreement also states that "This agreement sets forth the entire agreement of the parties hereto. The parties hereby agree that no other agreements, express or implied, shall apply to this agreement." Paradoxically, paragraph 19 of the lease agreement also states "This instrument constitutes the entire agreement."

The trial court found that the effect of the two instruments was such as to result in an installment sale. Not only is this a reasonable assumption in view of the fixation of these bins on concrete foundations and the cost involved in their movement, once erected, but there are other factors which lead to this conclusion. Paragraph 18 of both lease agreements contains an option-to-buy provision. In both leases this was stricken—apparently as being in conflict with the purchase agreement executed along with the lease. Also, the notice of default sent to defendants by plaintiff on December 5, 1972, stated "Notice is hereby given to you that you have defaulted in the terms of your *purchase contract* with me * * *." (Emphasis added.) It also stated "You are further notified that you have the right to *redeem the property* * * *." It further stated "* * * and upon making such payment to me, *no retaking of said property* will be permissible." (Emphasis added.) At no place in this notice of default is there mention of a lease, the whole tenor of the notice being that defendants have purchased the grain bins. We find ample evidence upon which the trial court could base its finding that

the bins had been sold rather than leased and that when defendants satisfied the note the bins would be their property.

There is ample authority to support the finding of the trial court that each lease involved in this case was in fact part of a conditional sales contract. Illinois Law and Practice (32 Ill. L. & Pr. *Sales* § 271, at 556, 559 (1957)) states that "While a conditional sale contract is to be distinguished from a lease of the property, a contract in the form of a lease may constitute a contract of conditional sale, and in determining the character of an alleged lease of personal property the courts will disregard the mere form and the words and will endeavor to reach the substance of the agreement." This statement is based primarily on two early cases, *Rosenbaum v. King*, 114 Ill.App. 648, and *Singer Mfg. Co. v. Ellington*, 103 Ill.App. 517. In *Rosenbaum* a peanut roaster was "rented" for $50, $5 per month to be paid "until the full sum of $50 is paid." The court said, at page 649, "We conclude that it is a conditional sale and not a lease; that its real object was to cover a sale, and under the guise of calling it a lease to preserve a lien upon the roaster."

In *Singer* the plaintiff purchased a sewing machine. The agreement stated that it was a lease. The price was $60. She paid $20 down and agreed to pay $3 per month. The defendant retook the machine after she had paid $45. She sued for her $45 and the court held that she could recover since the agreement was in fact not a lease which would permit the lessor to retain the money as rent and that since there was no default provision in their agreement she was entitled to recover her payments.

██ Having found each of the two transactions in question to be installment sales the trial court proceeded to test the compliance of the documents involved with the Illinois Retail Installment Sales Act. The trial court properly determined that each of the transactions between the parties was concerned with a separate statutory enactment. The 1965 sale was made when the Retail Installment Sales Act (Ill. Rev. Stat. 1965, ch. 121½, § 223 *et seq.*), approved June 17, 1957, effective January 1, 1958, was in force. That Act was repealed and another Retail Installment Sales Act substituted in its stead by an act approved July 26, 1967, effective January 1, 1968 (Ill. Rev. Stat. 1967, ch. 121½, § 501 *et seq.*). The 1968 sale was made when the latter Act was in force. The trial court found the documents applicable to the 1965 sale did not comply with the terms of Ill. Rev. Stat. 1965, ch. 121½, §§ 222, 224, 228 and 243, and that the documents applicable to the 1968 sale did not comply with the terms of Ill. Rev. Stat. 1967, ch. 121½, §§ 503, 505, 512 and 519. Because of the noncompliance the court applied sanctions provided in the Acts by denying plaintiff any finance charges, delinquency charges, interest or attorney's fees. Since no finance charge was stated in the 1965 sale docu-

ments, the court further invoked the penalty provided by Ill. Rev. Stat. 1965, ch. 121½, § 240, and reduced the cash price of the grain elevator by 10%, an amount of $1,435.

We cannot agree with the trial court that simply because the documents in question constituted retail installment sales contracts the application of the respective Retail Installment Sales Acts was automatic. Examination of those Acts discloses that not *all* retail installment sales are covered and that the coverage afforded by the two Acts differs. A discussion of the differences in the coverage is unnecessary to this opinion but each sale will be considered in the context of the applicable Act.

■■ The Act in force at the time of the 1965 sale defined "goods" as "any tangible personal property" (Ill. Rev. Stat. 1965, ch. 121½, § 223). The definition would include the grain bins in question. However, the same section of the statute defined "Retail installment sale" as "any sale, other than for a commercial or business use * * *." Thus, the 1965 sale is not covered by the Act if it was for a "commercial or business" use. Is farming commerce or a business? We find no Illinois cases that answer that query in the context of the Retail Installment Sales Act. However, this court held in *Campbell v. Yokel*, 20 Ill.App.3d 702, 313 N.E.2d 628, that farmers who regularly market their crops are merchants when they are selling those crops within the purview of the Uniform Commercial Code (Ill. Rev. Stat., ch. 26, § 1—101 *et seq.*). If a farmer is conducting his operation so as to come within the *Campbell* case definition of "merchant" then that would connote that he would also be engaged in commerce or business. It seems plausible, too, that a sale to a farmer who is a "merchant" of equipment, machinery or facilities used for the production of grain or other farm produce would be a sale for commercial or business use.

■■ The question of whether defendants were engaged in business or commerce was not raised or addressed by the parties in either the trial court or in this court on appeal. Although we deem the matter to be of controlling significance to the 1965 sale, there is no evidence in the record that would justify our reaching a conclusion on the matter. Rather, per *Hux v. Raben*, 38 Ill.2d 223, 230 N.E.2d 831, and *Wozniak v. Segal*, 56 Ill.2d 457, 308 N.E.2d 611, we note the possible intervention of plain error affecting substantially the rights of the parties. Accordingly, we remand this case to the trial court with directions that a hearing be held for the purpose of determining whether the sale of the grain bin to defendants in 1965 was for a commercial or business purpose within the purview of the Retail Installment Sales Act in effect at the date of such sale, and for such revision of the judgment as may be required.

■■ The act in force at the time of the 1968 sale defines "goods" as "all

goods used or purchased primarily for personal, family, or household purposes" (Ill. Rev. Stat. 1967, ch. 121½, § 502.1). This definition is initially much more narrow than the definition in the prior act, and being limited to personal, family or household purposes, would patently exclude the sale of a grain bin from its coverage. Subsequent language in the same section of the 1967 Act provides that "goods" "* * * also includes goods which are furnished or used, at the time of sale or subsequently, in the modernization, rehabilitation, repair, alteration, improvement, or construction of real estate so as to become a part of that real estate whether or not severable therefrom." An initial impression might be that the grain bin in question, being affixed to a concrete pad and thus being attached to real estate of defendants, would be included in the coverage of the Act. Such an interpretation is not available here, however, since it is readily apparent that the goods that are affixed to real estate must be of the category of goods used or purchased for personal, family or household purposes.

■■ Since we hold that the 1968 sale is not covered by the Retail Installment Sales Act of 1967, it was error to apply the sanctions provided in the Act for its violations. Accordingly, upon remand the trial court is directed to provide by its judgment for the allowance of interest and attorney's fees for that part of the note signed by defendants which pertains to the 1968 sale.

■■ We observe that the Retail Installment Sales Act of 1967 was amended by an Act of the legislature, effective October 7, 1969, which added the following to the definition of "goods": "Goods includes goods purchased primarily for agricultural purposes only for the purposes of the credit disclosure requirements of this Act." Had this language been in the definition of "goods" at the time of the 1968 sale of the grain bin then unquestionably the sale would have been covered by the Act for the limited purpose of credit disclosure, and, the sale documents not being in compliance, the sanctions would have been properly applied. The amendment does not, of course, have retroactive effect and it cannot serve as a vehicle for application of the sanctions to the 1968 sale.

Plaintiff argues that he should not be denied attorney's fees since the penalty provision states that recovery is denied only for "any delinquency or collection charge" and that this does not include attorney's fees. In view of our decision that the 1968 sale was not covered by the Act, this argument would pertain only to the 1965 sale, and only then if, upon remand, it was found that the 1965 sale was not for commercial or business purposes.

He supports this argument by citing section 6 of the Act in effect in 1965 which states that:

> "The holder of a retail installment contract may, if the contract so provides, collect a delinquency and collection charge on each installment in default for a period not less than 10 days in an amount not in excess of 5% of each installment or $5,00, whichever is less. In addition to such delinquency and collection charge, the retail installment contract may provide for the payment of reasonable attorney's fees where such contract is referred to an attorney who is not a salaried employee of the holder of the contract for collection." (Ill. Rev. Stat. 1965, ch. 121½, § 228.)

Plaintiff points out that in this section "delinquency and collection charges" and "reasonable attorney's fees" are separate items. We would point out, however, that in the instant case the suit was on a note and not for the collection of installments under the contract as contemplated by the quoted section.

 It is our view that section 6 of the 1965 statute is meant to apply when the holder of a retail installment contract is in compliance with the law and is seeking to recover under his contract. Section 17 of the Act in effect in 1965 provides that:

> "In case of failure of the seller or holder to comply with the provisions of this Act, the buyer has the right to recover from the seller or holder, as the case may be, an amount equal to the finance charge or 10% of the cash price if no finance charge is spefied in the contract or supplementary statement, whichever is the greater, plus *reasonable attorneys' fees.*" (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 121½, § 240.)

In the instant case defendants, seeking affirmative relief, are asking for the enforcement of this latter penalty provision under which they would have a right to collect reasonable attorney's fees. The trial court held and we agree that the penalty provision applies. Therefore, it would be ironic to hold that the plaintiff is entitled to attorney's fees when he has violated the law regarding installment sales contracts. Though the question seems not to have been considered in Illinois, we find authority from other jurisdictions to the effect that "collection charge" includes attorney's fees. See *Ben Construction Corp. v. Snushall* (1964), 254 N.Y.S.2d 948, 44 Misc.2d 878; *General Finance Co. v. Powell* (1943), 114 Mont. 473, 138 P.2d 255; *McClain v. Continental Supply Co.* (1917), 66 Okla. 239, 168 P. 815.

For the foregoing reasons the judgment is affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

KARNS, P. J., and G. J. MORAN, J., concur.