15 F.3d 1419
 28 Fed.R.Serv.3d 240
 BOULEVARD BANK NATIONAL ASSOCIATION, Plaintiff-Appellee,
v.
PHILIPS MEDICAL SYSTEMS INTERNATIONAL B.V., a Netherlands
corporation, and N.V. Philips Gloeilampenfabrieken
a Netherlands corporation, Defendants-Appellants.
 Nos. 93-1358, 93-2906.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 13, 1993.
Decided Feb. 8, 1994.
 
 Frederic R. Klein (argued) and Steven A. Levy, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, IL, for plaintiff-appellee.
 Robert J. Rubin (argued), Darren B. Watts, Miriam S. Barasch and Marjorie Kean Fradin, Altheimer & Gray, Chicago, IL, for defendants-appellants.
 Before POSNER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 This appeal involves a loan and other credit extended by Boulevard Bank (Boulevard) to High Tech Medical Parks Development Corporation (High Tech) to enable the latter to purchase medical equipment from Philips Medical Systems International B.V. and N.V. Philips Gloeilampenfabrieken (collectively, Philips). As a condition of the loan, Boulevard requested that High Tech obtain a guaranty from Philips. For the reasons stated below, we affirm.
 
 I.
 
 2
 Boulevard is a national banking association with its principal place of business in Chicago, Illinois. High Tech is an Illinois corporation. The Philips corporations are both organized and principally located in the Netherlands.
 
 
 3
 High Tech develops outpatient care services in South America. In February, 1989, High Tech sought a loan from Boulevard in order to purchase from Philips medical equipment, which would subsequently be leased to one of High Tech's medical clinic customers in Chile. To secure the loan, Boulevard requested that High Tech obtain a guaranty from Philips. In return, Philips would receive a pledge of the equipment and an assignment of lease payments.
 
 
 4
 The ensuing loan negotiation lasted until July of 1989. The terms and conditions accepted by the parties were reflected in two proposed commitment letters circulated to each of the parties, one in late March, 1989, and the other in mid-June, 1989. The commitment letters contemplated a $1.4 million loan to be made by Boulevard to High Tech, maturing in approximately five years, with equal payments of $140,000 principal, plus interest, payable semiannually. The commitment letters also contemplated a guaranty by Philips but limited Philips' guaranty liability "to the loan plus accrued interest and collection costs, if any." Pl.'s Statement, Davidson Aff. (Tab 5), Ex. C, p 3.[1] The loan was to be further secured by a "key man" life insurance policy, which would pay out to Boulevard upon the death of Dr. Martin E. Bruetman, President and CEO of High Tech. In June of 1989, a guaranty, drafted by Boulevard and limiting the guaranteed amount of High Tech's credit at Boulevard to $1.4 million, was executed. The guaranty made explicit reference to an "Exhibit A" but such an exhibit was not attached to any party's copy of the guaranty. The parties disagree on what, exactly, Exhibit A was. Philips asserts that Exhibit A was the note, claiming that Boulevard's pleadings and actions constitute admissions that this assertion is true. Philips further states that, because it never received a copy of the alleged note-exhibit, there was never a meeting of the minds to support any obligations by Philips under the guaranty. Boulevard claims that the language of the guaranty makes it clear that Exhibit A was the March, 1989 commitment letter, which had been sent to Philips months earlier. Boulevard thus argues that there was a meeting of the minds and Philips cannot evade its guaranty obligations.
 
 
 5
 In early July, 1989, High Tech executed and delivered to Boulevard the promissory note evidencing the loan, and Philips delivered its guaranty to Boulevard. The note obligated High Tech (in accordance with the commitment letters) to make ten payments of principal and interest on March 15 and November 15 of each year, beginning November 15, 1990. The note did not include the "key man" insurance provision, which Philips claims High Tech and Boulevard dropped without its consent, notwithstanding Philips' claims at trial and on appeal that it considered such a provision important to its guaranty decision. Philips also alleges that it was never sent a copy of the note. The guaranty did not expressly limit the credit that Boulevard could extend to High Tech, stating instead that "the liability of [Philips] under this guarantee shall not exceed [$1,400,000] plus interest and costs." Pl.'s Statement, DePew Aff. (Tab 6), Ex. A, p 1.
 
 
 6
 In addition to the $1.4 million loan, Boulevard extended to High Tech $400,000 of additional credit. Boulevard extended this credit pursuant to a preexisting credit line with High Tech. Pl.'s Resp., Davidson Reply Aff. (Tab 12), Ex. 1, pp 5-8; Pl.'s Resp., DePew Reply Aff. (Tab 7), Ex. 1, pp 4-9. Further, in late April or early May, 1991, High Tech asked Boulevard to restructure the loan to provide for monthly rather than semiannual payments. High Tech proposed the restructuring because it felt it would be unable to make the semiannual payment scheduled for May 15, 1991. Boulevard agreed to the restructuring, subject to Philips' approval. Pl.'s Statement, DePew Aff. (Tab 6), Ex. B, pp 1-2. The bank attempted to get Philips to approve the restructuring, but Philips said that it required more information. Consequently, High Tech defaulted on May 15, 1991, and Boulevard sent a letter to Philips demanding payment of the full amount owing on the loan. Boulevard sent this letter by fax and by overnight mail rather than by telex. The absence of a telex transmission ostensibly caused Philips to decline to accept the letter in accordance with a policy, allegedly stipulated in the guaranty, of requiring notices by telex.[2] Philips never received a telex from Boulevard.
 
 
 7
 In July, 1991, Boulevard filed suit against High Tech in state court for the loan balance and won a judgment the following September. Pl.'s Statement, Fine Aff. (Tab 7), Ex. A. The state court awarded the principal amount due on the note plus interest. Boulevard did not, however, collect on its judgment because of an alleged "understanding" with High Tech whereby the latter would "pay down" the outstanding balance on a monthly basis. More than a year after the state court judgment, however, much of the amount due ($985,998.79) was still outstanding. Boulevard also instituted proceedings to enforce the guaranty against Philips in federal court in July of 1991. Philips denied the bank's allegations and asserted affirmative defenses. During the fall of 1992, the parties filed cross motions for summary judgment.
 
 
 8
 In January, 1993, the district court granted summary judgment on the guaranty in favor of Boulevard and against Philips. Boulevard Bank Nat'l Ass'n v. Philips Medical Sys. Int'l B.V., 811 F.Supp. 357 (N.D.Ill.1993). Prior to entry of this judgment, in November of 1991, the district court had also rejected Philips' contention that High Tech was an indispensable party and that the district court consequently erred in denying Philips' motion to dismiss under Fed.R.Civ.P. 12(b)(7) and 19(b). In granting summary judgment, the court rejected each of the defenses proffered by Philips. The court also found that Philips had not shown that Exhibit A was the note and that, in any event, the failure to attach Exhibit A to the letter agreement did not prevent the parties from agreeing on the material terms of the transaction. The court also found that Boulevard and High Tech had not, in fact, restructured the loan without Philips' consent and that Boulevard's extension of the $400,000 in additional credit did not materially increase Philips' risk under the guaranty. Finally, the court found that the stipulation that Boulevard demand payment by telex did not establish a condition precedent to Philips' obligations under the guaranty. Based on these findings, the court awarded the damages (principal and interest) requested by Boulevard, including, inter alia, $28,417.69 in interest due under the guaranty as of November 25, 1992, plus interest which has accrued subsequent to that date and collection costs (including attorneys' fees) through October 31, 1992, amounting to $151,435.23.
 
 
 9
 On January 25, 1993, Boulevard moved to amend the judgment under Rule 59(e) in order to incorporate interest and collection costs (including attorneys' fees) incurred through January 13, 1993, the date of the summary judgment. In these reconsideration proceedings, Philips argued for the first time that, as a matter of law, it was not required to pay any attorneys' fees as a part of "collection costs." Philips contended that the commitment letter only made it liable for "collection costs" and that that term could not, under Illinois law, be interpreted to include attorneys' fees. In addition, Philips objected to the reasonableness of the attorneys' fees because, it claimed, Boulevard lacked adequate documentation of the fees.[3] On July 16, 1993, the district court granted Boulevard's motion to amend and entered an amended judgment accordingly. 827 F.Supp. 510.
 
 II.
 
 10
 The jurisdiction of the district court was premised upon diversity of citizenship. 28 U.S.C. Sec. 1332(a)(2) (1993). Jurisdiction in this court is premised upon 28 U.S.C. Secs. 1291 and 1294(1). The district court's amended judgment is final and appealable, since the court resolved the remainder of the issues before it in the amended judgment of July 16, 1993.[4] This dispute is governed by Illinois law and we review the district court's summary judgment holdings de novo. Derrico v. Bungee Int'l Mfg. Co., 989 F.2d 247, 249 (7th Cir.1993).
 
 A. Joinder
 
 11
 As a preliminary matter, we agree that High Tech was not an indispensable party. In that connection, the district court correctly denied Philips' motion to dismiss under Fed.R.Civ.P. 12(b)(7) and 19(b). This court has held that, in deciding a Rule 12(b)(7) motion to dismiss, we must apply Rule 19(b) if we first determine that the party to be joined satisfies the threshold requirements of Rule 19(a). Moore v. Ashland Oil, Inc., 901 F.2d 1445, 1447 (7th Cir.1990). Thus, Rule 19(a) requires joinder when the presence of the party to be joined is essential to the litigants' complete relief, or when the party to be joined must be present to protect its own or another party's interests. Fed.R.Civ.P. 19(a). If the court finds that the requirements of Rule 19(a) are satisfied, it may dismiss the action if, in weighing four additional factors specified in Rule 19(b), those factors so indicate.[5]
 
 
 12
 Clearly, High Tech need not have been joined for the court to afford the litigants complete relief. Under Illinois law, a lender holding a guaranty of payment may sue a guarantor directly, without naming the borrower. Weger v. Robinson Nash Motor Co., 340 Ill. 81, 172 N.E. 7, 11 (1930) ("Guarantors must be regarded as original promissors, who bound themselves to pay the notes when they matured ... and their liability was not to depend upon the prosecution of suit against the maker."); Lawndale Steel Co. v. Appel, 98 Ill.App.3d 167, 53 Ill.Dec. 288, 291, 423 N.E.2d 957, 960 (1981) (creditor can sue "absolute" guarantor without first attempting collection from debtor since absolute guarantor is one who has undertaken guaranty unconditionally and is thus "liable immediately upon default of the principal, without notice"). Neither does High Tech have to be a party to protect its own interests since High Tech has already lost to Boulevard in state court. Pl.'s Statement, Fine Aff. (Tab 7), Ex. A. Consequently, High Tech's interests in this dispute have already been conclusively determined. Finally, Philips points to no other party standing outside the instant loan-guaranty arrangement whose interests require vindication within the meaning of Rule 19(a). Thus, High Tech fails to meet even the threshold requirements of Rule 19(a), and we need not weigh the indispensability factors governing dismissal under Rule 19(b). The district court's denial of Philips' motion to dismiss was proper.
 
 B. Exhibit A
 
 13
 The first sentence of Philips' guaranty refers explicitly to an "Exhibit A":
 
 
 14
 [Philips] taking into consideration that [Boulevard] is granting credit facilities to [High Tech] up to a maximum of [$1,400,000] against the conditions as agreed between [Boulevard] and [High Tech] (set forth in Exhibit A ) as agreed and acknowledged to by [Philips], hereby guarantees, to immediately pay to the Bank all sums of money which shall become due [Boulevard] from [High Tech], resulting from the above-mentioned credit facilities, should [High Tech] fail to pay such sums of money on its due date.
 
 
 15
 Pl.'s Statement, DePew Aff. (Tab 6), Ex. A, p 1 (emphasis supplied). Yet when, at Philips' request, High Tech delivered the executed original of the guaranty to Boulevard, Exhibit A was not attached. Based on this oversight, Philips argues that it should be released from its guaranty obligations. First, Philips claims that there was a material issue of fact precluding summary judgment since, according to Philips, Exhibit A was the note; Boulevard, on the other hand, contends that Exhibit A was the commitment letter. Philips, relying primarily on the text of Boulevard's complaint and on Philips' claim that Boulevard sent Philips a copy of the note in response to Philips' request for Exhibit A, argues that Boulevard treated the note as Exhibit A. Second, Philips contends that the failure to attach Exhibit A prevented the parties from agreeing on a material term of the guaranty. Philips further argues that this defect was not cured by its actual knowledge of the contents of the March, 1989 commitment letter. That letter provided for the insurance policy on the life of Dr. Bruetman, but this provision was omitted from the promissory note itself. Philips claims that this omission materially increased its risk under the guaranty.
 
 
 16
 The first argument fails. The complaint refers to "a letter agreement agreeing to guaranty the note." Pl.'s Statement, Boulevard Compl. (Tab 1), Count I, p 13. From this, Philips argues that, since the guaranty evidenced its agreement to "guaranty the note," the note itself must have been what was attached to the guaranty as Exhibit A. Philips' reading of Boulevard's complaint is, at best, strained. The language of the complaint shows only that Philips was aware of, and agreed to guarantee, High Tech's debt. In our view, "agreeing to guarantee the note" is merely another way of saying "agreeing to guarantee the loan." This language does not suggest that the note evidencing the debt was attached to the guaranty. Moreover, Philips points to no evidence supporting its claim that Boulevard sent the note in response to Philips' request for Exhibit A. Indeed, there is evidence in the record suggesting that the note Philips received was delivered at the direction of Philips' counsel. Pl.'s Resp., DePew Dep. (Tab 6), at 27-29.[6]
 
 
 17
 The second argument likewise fails. Under Illinois law, a party with actual knowledge of its contractual obligations cannot escape those obligations simply because an attachment was omitted from the written contract. Burns v. Ford Motor Co., 29 Ill.App.3d 585, 331 N.E.2d 325, 329 (1974). Here, the missing attachment was Exhibit A to the guaranty which, according to the guaranty itself, stated the terms under which Boulevard loaned money to High Tech. See Pl.'s Statement, DePew Aff. (Tab 6), Ex. A, p 1 (stating that the guaranty applies "against the conditions as agreed between [Boulevard] and [High Tech] (set forth in Exhibit A )") (emphasis supplied). However, since the March, 1989 commitment letter explained the terms of the loan, Philips knew of them more than two months before executing the guaranty. The commitment letter, of course, stated that Boulevard would loan $1.4 million to High Tech at the prime rate, that the loan would mature in five years and ten months and that only interest was payable for the first ten months with equal, semi-annual payments of both principal and interest thereafter. Pl.'s Statement, Davidson Aff. (Tab 5), Ex. C, p 3. Hence, Exhibit A merely reiterated terms of which Philips was already aware; there is no basis for invalidating the guaranty because the exhibit was missing.
 
 
 18
 Philips' argument that the note, in failing to provide for Dr. Bruetman's life insurance, did not contain all the material terms of the commitment letter does not help its cause. At best, Philips can argue that its risk as guarantor was increased by the omission. Under Illinois law, however, the omission is not material to Philips' obligations. For Illinois law provides that the omission of the insurance term releases Philips only to the extent that it increases Philips' risk or prohibits Philips from protecting its own interests. See McHenry State Bank v. Y & A Trucking, Inc., 117 Ill.App.3d 629, 73 Ill.Dec. 485, 488-89, 454 N.E.2d 345, 348-49 (1983). This principle has been interpreted to limit a guarantor's release to the extent of its injury. Continental Bank, N.A. v. Everett, 760 F.Supp. 713, 717 (N.D.Ill.1991) (citing McHenry State Bank), aff'd, 964 F.2d 701 (7th Cir.1992). Here, the omission of the insurance provision exposed Philips to additional risk only to the extent that insurance would have paid off the debt in the event of Dr. Bruetman's death. Since, however, Dr. Bruetman appears to be very much alive,[7] there has been no occasion to receive any proceeds of an insurance policy to help make the payments due under the note or to cover a default. The lack of insurance is therefore irrelevant on the present facts. Thus, like Philips' claims respecting Exhibit A, Philips' arguments based on a failure to agree to all the terms of the loan do not relieve it of any liability.
 
 C. Loan Restructuring and Credit Extension
 
 19
 Philips also contends that it should be released from the guaranty because Boulevard restructured the loan without Philips' consent. We recognize that, under Illinois law, an extension of the time for payment generally discharges a guarantor if that extension was granted without his knowledge or consent. Lawndale Steel Co., 53 Ill.Dec. at 293, 423 N.E.2d at 962. But that is not this case. As indicated, the letter in which Boulevard agrees to restructure the loan to permit monthly payments also makes that restructuring contingent upon Philips' approval. Since there was no approval, we agree with the district court that "there is no evidence that a binding agreement was entered into between the parties [Boulevard and High Tech]." 811 F.Supp. at 363. Indeed, Philips' brief on appeal seems to concede as much, since it makes the point that Boulevard's letter agreeing to the monthly payments threatened to declare a default if Philips would not agree to such payments. The only evidence of an agreement to make payments monthly is the alleged "understanding" between creditor and debtor, whereby Boulevard, after declaring High Tech in default, accepted several monthly payments. Boulevard Br. at 29-30. It would be unreasonable to punish a creditor that accepts such modified loan payments after default (when the entire loan is due) by finding that the creditor thereby had agreed to "restructure" the loan. Not only is the entire loan due but the creditor has obtained a stipulated judgment to that effect. Id. at 30-31. Since, on these facts, Boulevard never actually restructured the loan, there has been no discharge of the guaranty.
 
 
 20
 Philips' claim that Boulevard materially increased Philips' risk by advancing more than the guaranteed $1,400,000 also fails. As indicated, Boulevard only honored a line of credit that was already in place at the time Philips executed the guaranty. Without any relevant provision in the guaranty or elsewhere, we are not persuaded that restricting this preexisting credit line to the amount of the guaranty was a condition of the guaranty. Indeed, the guaranty states only that Philips' liability under the agreement shall not exceed $1.4 million. Pl.'s Statement, DePew Aff. (Tab 6), Ex. A, p 1. There is no reason to treat Boulevard's honoring of an existing credit line differently from an advance from another source. Presumably, an advance from another source would benefit Philips by making more cash available to High Tech to help in servicing its debt to Boulevard. This in turn would reduce the likelihood of Philips' having to honor its guaranty obligations. Indeed, it would appear that Philips' only objection to the additional advance is that Philips might somehow become responsible for guaranteeing the additional credit. But this is not the case. As noted, Philips' guaranty does not limit the amount that Boulevard may loan High Tech. It merely limits the amount subject to Philips' guaranty. Illinois law provides that, "[i]n the absence of an expressed intention in the contract that the ... [specified credit limit is] ... to be ... an absolute condition of the guarantor's undertaking, the extension of credit beyond that amount does not discharge or release the guarantor...." McLean County Bank v. Brokaw, 119 Ill.2d 405, 116 Ill.Dec. 561, 564, 519 N.E.2d 453, 456 (1988).[8]D. Attorneys' Fees
 
 
 21
 Boulevard moved to amend the district court's initial January 13, 1993 judgment to incorporate certain additional interest and collection costs (including attorneys' fees) incurred through January 13, 1993, the date of the summary judgment.[9] The district court granted that motion, after considering the merits of Philips' obligation under the guaranty to pay Boulevard's attorneys' fees as an item of collection costs. The district court also considered whether Boulevard had provided adequate documentation to show that these fees were reasonable. The district court may not have been required to consider on a motion to amend the question whether "collection costs" included attorneys' fees, since Philips had not raised this issue in briefing the summary judgment motion. See Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986) ("[Rule 59] motions cannot be used to raise arguments which could, and should, have been made before the judgment issued."). However, since the district court did not deem the collection cost arguments to have been waived, we also will address their merits.
 
 
 22
 Philips argues first that the "collection costs" to which the guaranty refers cannot, under Illinois law, be construed to include attorneys' fees. We reject this argument. While Illinois courts have apparently not specifically determined the scope of the term "collection costs," at least one Illinois court has interpreted the term "collection charges." In Meeker v. Fowler, 35 Ill.App.3d 313, 341 N.E.2d 412 (1976), the court held, relying on cases from other states, that the term "collection charges" encompasses attorneys' fees. Id. 341 N.E.2d at 419. Philips argues that Meeker is not persuasive authority since that court was construing a statute rather than a guaranty or other contract. Yet Philips offers no more persuasive authority. It points only to the principle of Illinois law that attorneys' fees and expenses generally are recoverable only where explicitly required by a written contract. Qazi v. Ismail, 50 Ill.App.3d 271, 7 Ill.Dec. 434, 434, 364 N.E.2d 595, 595 (1977) ("all costs and consequences [resulting from any legal action]" does not encompass attorneys' fees); Singleton v. County of Cook, 53 Ill.App.3d 994, 11 Ill.Dec. 773, 775, 369 N.E.2d 227, 229 (1977) ("indemnify and save harmless against all loss, damage or expense [caused by] any suits, actions or claims" does not encompass attorneys' fees); Reese v. Chicago, B. & Q. R.R., 5 Ill.App.3d 450, 283 N.E.2d 517 (1972), aff'd, 55 Ill.2d 356, 303 N.E.2d 382 (1973) ("indemnity" does not encompass attorneys' fees in tort action); see, cf., Prudential Ins. Co. v. Curt Bullock Builders, Inc., 626 F.Supp. 159, 170 (N.D.Ill.1985) ("General promises to pay 'costs,' 'expenses,' or the like are not promises to pay attorneys' fees [under Illinois law]."). But the Illinois courts have only construed the term "costs" standing alone. They have not construed "costs" as modified by another term, in particular as modified by "collection."
 
 
 23
 In order to give effect to the term "collection costs" in the commitment letter, we ought to construe it to include the major cost items incurred in trying to make good High Tech's deficiency. We agree with the district court that, if the parties had intended to exclude attorneys' fees from "collection costs," they could have simply used the term "costs," which would, under Illinois law, have eliminated attorneys' fees. Further, the inclusion of attorneys' fees in "collection costs" is consistent with paragraph 8 of the note, which states that the "costs of collection" include attorneys' and paralegal fees and expenses. Note, Philips Br., App. at 39, p 8.
 
 
 24
 With respect to the separate question whether Boulevard adequately documented the reasonableness of its attorneys' fees, Philips' arguments seem meritless. Boulevard presented detailed time statements of its attorneys showing who performed what task, how much time each task entailed and how the tasks were related to and required by the litigation. On its face, this documentation was sufficient to support the claimed fees and Philips points to no authority to the contrary.
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the judgment of the district court, as amended.
 
 
 
 [1]
 For convenience, we use the following short forms in referring to the record on appeal:
 "Pl.'s Statement" = Plaintiff's Statement of Uncontested Facts
 "Pl.'s Resp." = Plaintiff's Response Pursuant to Local Rule 12(m), (n)
 
 
 [2]
 The guaranty states, in paragraph two, that Philips will pay out on the guaranty upon Boulevard's "telex request." Pl.'s Statement, DePew Aff. (Tab 6), Ex. A, p 1. However, paragraph four states that Philips will pay "upon request of ... the amount due." Id. p 4. Paragraph five states that the guaranty "shall be due and payable ... upon written or telex demand." Id. p 5 (emphasis added)
 
 
 [3]
 Philips made no objection to the additional interest claim
 
 
 [4]
 At the time the parties filed their appellate briefs in Case No. 93-1358 (now consolidated with 93-2906), the district court had not yet resolved the Rule 59(e) motion. On March 9, 1993, however, this court entered an order that the district court's January 13, 1993 judgment was final with respect to the issues in the appeal in No. 93-1358. The briefs in Case No. 93-2906 were filed subsequent to the district court's final amended judgment of July 16, 1993 and are thus proper
 
 
 [5]
 These factors are: whether there is potential prejudice to the party to be joined or to the litigants; whether the court can fashion a judgment to avoid such prejudice; whether the court can enter an adequate judgment without the absent party; and whether dismissal of the actions would deprive the plaintiff of an adequate remedy. Fed.R.Civ.P. 19(b); Todd ex rel. Todd v. Merrell Dow Pharmaceuticals, Inc., 942 F.2d 1173, 1176 (7th Cir.1991). But see Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-11, 88 S.Ct. 733, 737-39, 19 L.Ed.2d 936 (1968) (articulating a slightly different set of factors to be examined in determining a party's indispensability under Rule 19(b))
 
 
 [6]
 At deposition, Angela K. DePew, a Boulevard employee, stated that she was responsible for sending a copy of the note to Philips, along with other documents, in response to a request from one of Philips' attorneys. DePew could not recall, however, whether the attorney requested the note specifically or whether he had requested what Boulevard contended was Exhibit A
 
 
 [7]
 Dr. Bruetman is the named defendant in at least two other appeals before this court, both of which concern his allegedly contumacious behavior in this and other courts. Philips Medical Sys. Int'l, B.V. v. Bruetman, 8 F.3d 600 (7th Cir.1993); Philips Medical Sys. Int'l, B.V. v. Bruetman, 982 F.2d 211 (7th Cir.1992)
 
 
 [8]
 Philips also contends that it should not have to honor its guaranty obligations because Boulevard did not demand payment by telex, as the language in paragraph two of the guaranty appears to require. We reject this argument. As noted, the guaranty states elsewhere that Philips must pay "upon request" and "upon ... written or telex demand." Pl.'s Statement, DePew Aff. (Tab 6), Ex. A, pp 4-5. The language of the guaranty does not, then, appear to limit the medium of a demand to telex. Rather, the language indicates that Boulevard may try to enforce the guaranty in writing, by using the telex or by simply "requesting" payment. Illinois law argues against construing telex demand as a condition precedent to Philips's performance under the guaranty. South Div. Credit Union v. Deluxe Motors, Inc., 42 Ill.App.3d 219, 355 N.E.2d 715, 718-19 (1976) (a party is not entitled to condition precedent construction unless such condition is evidenced by the contract's language or it can be established that parties intended to create such condition at time of contracting)
 Boulevard faxed Philips a request for payment and made a written demand via overnight mail. Philips has not shown that the parties intended telex to be the only medium by which Boulevard could legitimately demand payment on the guaranty. We agree with the district court that, given the apparent acceptability, under paragraphs four and five, of alternative methods of demand, Philips cannot refuse to pay simply because Boulevard did not demand payment by telex.
 
 
 [9]
 As indicated, the original judgment covered collections costs only through October 31, 1992