WATKINS PRODUCTS, INC., Plaintiff-Appellant, *v.* NEDRA L. WALTER *et al.,* Defendants-Appellees.

(No. 72-156; ■■■■■■■■)

Fifth District—May 29, 1973.

418

Vuagniaux & Metzger, of Collinsville, (Frank R. Hudak, of counsel,) for appellant.

Lueders, Robertson & Konzen, of Granite City, (Leo H. Konzen, of counsel,) for appellees.

Mr. JUSTICE CREBS delivered the opinion of the court:

This appeal comes on as the result of an action based upon a surety contract. The plaintiff's complaint sets forth a certain surety contract signed by defendant-appellee, Thelma Gonterman, and two co-defendants, Nedra Walter and John Gonterman, wherein the defendants agreed to act as surety for a credit purchase contract between plaintiff and the principal debtor, Robert Madden. The principal, Madden, defaulted under the terms of his contract and plaintiff thereupon filed suit against defendants. The defendants John E. Gonterman and Nedra L. Walter were nonsuited and plaintiff proceeded solely against defendant, Thelma Gonterman.

The defendant did not deny the existence of the surety contract nor was the principal indebtedness in dispute. Defendant did, however, assert by way of defense the fact that she was a gratuitous surety who was not treated by the creditor in fairness and good faith and that there

was a material change in the contract, without her consent, all of which she claimed entitled her to be discharged of any obligation created under the said contract. After a bench trial, the court found the issues in favor of defendant and against plaintiff. A post trial motion was thereafter denied and plaintiff has appealed. On appeal plaintiff claims that a valid and subsisting contract existed unaffected by any defenses raised by defendant.

The facts in the case are largely uncontested. Plaintiff and the principal debtor, Robert Madden, entered into a contract on May 3, 1961, wherein plaintiff agreed to furnish its goods to the principal on credit. The contract also called for the principal to provide at his own cost a bond in the sum of $2,000.00 indemnifying plaintiff against loss. It was this contract for which defendant agreed to act as surety. The principal made an initial payment of $40.00 to plaintiff in order to obtain the corporate surety bond required. The bond was, however, never obtained, although plaintiff alleges that it turned the $40.00 over to a bonding company.

During the term of the contract, the principal's indebtedness to plaintiff continued to grow. This increasing indebtedness began to worry plaintiff, and in the early part of 1962 a "control" was placed on credit shipments to the principal. Defendant was not notified of this concern nor the control which was placed on the account.

In September of 1962, more than a year after the contract was entered into, a second contract or agreement was presented to the principal, wherein the line of credit and surety requirement was increased from $2,000.00 to $5,000.00. This second agreement was apparently presented because the principal had exceeded his original line of credit and his account was significantly in arrears. The principal testified that he executed this second agreement and that one of the other defendants, Nedra Walter, signed that agreement as surety but that defendant refused to sign. Plaintiff denies accepting this second agreement, but does, however, admit accepting a second payment of $40.00 at about the same time which payment was to be for the second corporate surety bond. That bond, like the first one for which the principal paid in 1961, was apparently never obtained. There is no explanation for this failure to have the corporate surety bond. The agreement between principal and plaintiff was thereafter terminated in December of 1962 after which principal made some partial payments on the account. One or more of these payments were returned by plaintiff together with a demand for full payment. When full payment was not made, the plaintiff filed suit against the sureties. The sureties deny receiving any notice or demand until suit was filed.

■■ There are two separate and distinct types of sureties, each of which is treated differently under the law. There is a surety for hire and a gratuitous surety, such as the defendant herein. A private, voluntary or gratuitous surety is a favorite of the law and the contract creating the suretyship is construed strictly in his favor. (*Baker v. Peterson*, 300 Ill. 526.) Such a surety is entitled to be dealt with in fairness and good faith (50 Am.Jur. 923, Suretyship, sec. 32.) and will be released when his risk is increased or he is deprived of the opportunity to protect himself by reason of the fact that the creditor refuses or fails to do some act required by the surety and which it is his duty to perform, or does some positive injurious act of interference. (50 Am.Jur. 933, sec. 41.) The issue, therefore, is whether plaintiff's conduct was sufficient to warrant defendant's release from the surety contract. We feel that it was and that defendant should have been released.

■■ The plaintiff in this case wilfully failed or refused to purchase a corporate surety bond as required by the original agreement although two separate payments to purchase said bond, as required by plaintiff, were admittedly made by the principal to the plaintiff. There is absolutely no explanation why these bonds were not in existence. The defendant testified, as did all of the sureties, that she knew about the corporate bond and was made to believe that there was no problem with signing as a surety since she would be covered by the corporate bond. The collateral security represented by such a bond was not only for the payee's benefit but for the sureties' indemnity as well, and destruction of such collateral security by the payee without consent of the sureties will operate to release the sureties from liability (*Lawrence v. Hammond*, 208 Ill.App. 31), at least to the extent of the loss occasioned by such conduct on the part of the payee. (*Hall v. Hoxsey*, 84 Ill. 616: *Phares v. Barbour*, 49 Ill. 370.) Here the original corporate surety was to be in the sum of $2,000.00, and because the principal had exceeded his debt ceiling the second was to be increased to the sum of $5,000.00, which would have exceeded the amount of the claimed indebtedness. Clearly the failure to obtain the collateral security which principal paid for demonstrates a complete lack of good faith on plaintiff's part and significantly increased the risk of defendant and deprived her of the protection she has a right to have. That conduct, constituting a callous disregard for the sureties and a complete lack of good faith, was and is sufficient in and of itself to warrant release of the surety. The whole course of plaintiff's conduct demonstrates its indifference toward the rights of the sureties. Plaintiff failed to tell the sureties of the problems it was having with principal, failed to accept partial payments which would have reduced the sureties' claimed indebtedness, failed to obtain the corporate

surety bond and even apparently went so far as to solicit a second agreement and second contract of suretyship. It is not even clear that the agreement upon which this suit is based was not abandoned by plaintiff when, at plaintiff's request, the principal executed the new agreement and a new surety agreement was executed by a surety other than defendant. Under these circumstances we find that the decision of the trial court was justified by the law as it pertains to the facts here presented. If the agreement was not abandoned, it is clear that plaintiff, by failing to exercise good faith in dealing with the surety and by allowing collateral security to be lost, significantly altered defendant's undertaking and increased her risk, which conduct operated to release defendant from her obligation under the surety agreement. The decree of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER, P. J., and JONES, J., concur.