Charles F. Wohlhuter, Plaintiff-Appellant, *v.* St. Charles Lumber & Fuel Co. *et al.*, Defendants-Appellees.

(No. 73-220;

Second District (1st Division)—February 7, 1975.

Redman, Shearer, O'Brien & Blood, of St. Charles (Richard D. Shearer, of counsel), for appellant.

Geister, Schnell, Richards & Brown, of Elgin (Donald J. Weaver, of counsel), for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff appeals from the judgment below which vacated a prior judgment entered by confession under the terms of a promissory note. The trial court found that plaintiff failed to properly file a financing statement to perfect his security interest in inventory pledged as collateral for the loan, thereby unjustifiably impairing the collateral so as to discharge the parties to the instrument from liability under section 3—606 (1)(b) of the Uniform Commercial Code (hereinafter UCC). Ill. Rev. Stat. 1971, ch. 26, par. 3—606(1)(b).[1]

The defendants Ivan L. Anderson and Stanley D. Lee were majority stockholders, directors and officers of the defendant corporation, St. Charles Lumber and Fuel Co. Anderson and Lee negotiated with the plaintiff for a $50,000 loan. Plaintiff made the loan, receiving a promissory note signed as follows:

> "Ivan L. Anderson  ST. CHARLES LUMBER AND FUEL CO.
> Stanley D. Lee    By: Ivan L. Anderson (Seal)
> Ann P. Lee                President
> Annette Anderson  Attest: Stanley D. Lee (Seal)
>                         Secretary "

A security agreement (chattel mortgage) under which the corporation pledged its inventory as collateral secured the loan. The agreement provided that the inventory would be maintained in such an amount that the indebtedness owed by the debtor to the secured party at all times would not exceed 80% of the value of the security.

The note and security agreement were given to plaintiff on February 15, 1966, and he filed the security agreement in the office of the recorder of deeds in Kane County on February 17, 1966. He did not, however, file either a copy of the security agreement or a financing statement with the Illinois Secretary of State. No principal payments were made by the St. Charles Lumber and Fuel Co. during the time the Andersons and Lees owned the corporation, but the interest was paid as accrued.

In June of 1968, the Andersons and the Lees sold all of their stock

---

[1] "§ 606. *Impairment of Recourse or of Collateral.*

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

    *    *    *

  (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

in the St. Charles Lumber and Fuel Co. to Barrett Paper Co. and resigned as officers. At the time of the sale there was sufficient inventory on hand to satisfy the security agreement made with Wohlhuter. Wohlhuter was made aware of the disposition and sale of the lumber company, and the Barrett Paper Company was informed of the outstanding mortgage on the inventory. The Barrett Paper Company also made a $15,000 payment on the principal of the note to Wohlhuter at that time.

Subsequently, in November of 1969, the St. Charles Lumber and Fuel Co. found itself in financial trouble and sold all of its inventory of plywood and lumber supplies to another company in a bulk transfer. It appears that at the time of this transfer the inventory on hand was sufficient to satisfy the original security agreement. The purchaser was unaware, however, of the Wohlhuter security interest in the inventory, and during the 6 months following the sale the lumber and plywood were consumed.

On July 27, 1970, plaintiff put his note in judgment. The defendants, Ivan L. Anderson, Annette Anderson, Stanley D. Lee and Ann P. Lee filed their motion to open the judgment, and after a hearing the trial court entered the judgment from which this appeal is taken.

The plaintiff contends that his act of recording the security agreement in Kane County instead of filing a financing statement with the Secretary of State as provided by statute (UCC section 9—402) was not an impairment of the security pledged by St. Charles Lumber and Fuel Co. under the provisions of the UCC. Furthermore, he contends that the individual defendants accepted his requirement of personal liability as a condition for his loan and cannot now disclaim their personal liability after disposing of their interest in the corporation by making this a corporate obligation.

The defendants argue that because of the plaintiff's failure to file a financing statement in the office of the Secretary of State he failed to perfect the security interest which permitted the disposition of the collateral free and clear of any interest therein. Accordingly, they argue that the plaintiff's failure constituted an impairment of the collateral which operated to discharge the parties to the instrument under section 3—606 of the UCC.

■■ We do not agree that the question of the impairment of the security is the dispositive issue in the case, however, for we conclude that the defenses enumerated in section 3—606 of the UCC, upon which the trial court ruled, are available only to known sureties. The particular defense that there has been an "unjustifiable impairment of collateral" is not available, in our view, to principals and co-makers. *Peoples Bank*

*v. Pied Piper Retreat, Inc.* (W.Va. 1974), 209 S.E.2d 573, 578; *Oregon Bank v. Baardson* (1970), 256 Ore. 454, 473 P.2d 1015, 1017.

On its face, UCC section 3—606 would appear to apply to *any* party to the instrument. It appears, however, from the Uniform Commercial Code Comment (Ill. Ann. Stat. ch. 26, par. 3—606, at 411 (Smith-Hurd 1963)) that the words "any party to the instrument" were added to remove an uncertainty which arose under the original section as to its applicability to accommodation parties. The suretyship defenses, according to the commentary, "are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so." See also *Security National Bank v. Temarantz* (N.Y. Sup. Ct. 1969), 6 UCC Reporting Service 157, 158-9.

▮▮▮ An accommodation party is one who signs the instrument in any capacity, including the capacity of a maker, for the purpose of lending his name to another party generally. (UCC section 3—415. See also *Common Wealth Insurance Systems, Inc. v. Kersten* (1974), 40 Cal. App. 3d 1014, 115 Cal. Rptr. 653, 663.) An accommodation maker's basic liability to a holder is identical to that of any other maker. He engages to pay the note according to its tenor at the time of signing. However, the surety status of an accommodation party will give him special defenses (*e.g.*, UCC section 3—606) unavailable to the general run of parties on instruments. See White and Summers, Handbook of the Law under the Uniform Commercial Code 428 (1972). See also *Rose v. Homsey* (1964), 347 Mass. 259, 197 N.E.2d 603, 605-606.

▮▮ Whether a party is an accommodation party at the time of signing is a question of fact and intention. (*Common Wealth Insurance Systems, Inc. v. Kersten* (1974), 40 Cal. App. 3d 1014, 115 Cal. Rptr. 653, 663. See also *First National Bank v. Achilli* (1973), 14 Ill.App.3d 1, 5). Once status as a maker has been affirmatively established, it is not subject to change. For example, the maker of a note could not recast his role to that of a surety or accommodation maker by selling or transferring the property which secures the note to another party. See *Commerce Union Bank v. May* (Tenn. 1973), 503 S.W.2d 112, 116.

In *Common Wealth Insurance Systems, Inc. v. Kersten,* the court found evidence that parties were not accommodation makers in a situation where they had signed a note in their individual capacities, were among the principal stockholders of the corporate signer and where the loan was essential to the preservation of their interest in the corporation. Similarly, there is strong evidence here that Anderson and Lee were not accommodation makers but principals. They were the sole stockholders

of the St. Charles Lumber and Fuel Co. At the time they made the loan, it appeared that this loan was important to the preservation of the interest in the corporation, and the note was signed in both a personal and corporate capacity. Furthermore, personal liability to Mr. Wohlhuter has been admitted in testimony as well as in argument. In addition, the stipulation of counsel indicates that at the time the corporation was sold to the Barrett Paper Company, defendants requested a release from their personal and individual liabilities on the note. Although it appears that Wohlhuter refused to give the release, it also appears that defendants included a "hold harmless" clause in the sale contract to Barrett to protect them from their individual liability to Wohlhuter. Furthermore, the original promissory note contained a clause stating that "[a]ll signers of this note are principals * * *."

■■ It appears, therefore, that at the time defendants individually signed the promissory note, they knowingly incurred personal liability and were thus signing in the capacity of co-makers. Accordingly, the defenses enumerated in UCC section 3-606 are not available to them.

Even if it could be argued that defendants believed they signed the note as accommodation parties, it must still be shown that they were in the position of known sureties. And there is no evidence that Wohlhuter possessed or should have possessed any such awareness from the record.

■■ Our finding that the defense of impairment of security under the provisions of UCC section 3—606 was unavailable to the defendants disposes of the case without reference to the propriety of the trial court's finding that the security was impaired by the failure to file the financing statement in the Secretary of State's office.[2] For the reasons that we have stated, the trial court erred in vacating the judgment taken by plaintiff and we therefore reverse.

Reversed.

GUILD and HALLETT, JJ., concur.

---

[2] It is clear that the failure of a creditor to perfect his security interest in collateral, thereby causing the interest to be subordinated to the interest of a third party, constitutes an unjustifiable impairment of collateral which, under UCC section 3—606, discharges a party from liability to the extent of the impairment. *Peoples Bank v. Pied Piper Retreat, Inc.,* (W. Va. 1974), 209 S.E.2d 573, 577-8; White and Summers Uniform Commercial Code 1972, pages 428-9. See also *First Bank & Trust Co. v. Post* (1973), 10 Ill.App.3d 127; *White v. Household Finance Corp.* (Ind. Ct. App. 1973), 302 N.E.2d 828; *Shaffer v. Davidson* (Wyo. 1968), 445 P.2d 13. But compare *First Citizens Bank & Trust Co. v. Larson* (1974), 22 N.C. App. 371, 206 S.E.2d 775 (finding no *unjust* impairment in failing to file the financing statement when, as here, the security agreement appears to have given the debtor an option as to whether the financing statement is to be filed).