McHENRY STATE BANK, Plaintiff-Appellee, *v.* Y & A TRUCKING, INC., *et al.*, Defendants-Appellants.

Second District   No. 82—887

---

Opinion filed August 23, 1983.

Richard J. Short, of Chicago, for appellants.

Michael F. Kukla, of Crystal Lake, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendants, Peter Jantzen and Jantzen International, Ltd. (International), appeal from orders of the circuit court of McHenry County granting summary judgment to plaintiff, McHenry State Bank (Bank), and against defendants in the amount of $22,548.52 and denying defendants' motion for summary judgment. Defendant, Y & A Truck-

ing, Inc. (Y & A), is not a party to this appeal.

The parties appear to be in substantial agreement as to the facts. On October 8, 1977, the Bank loaned Y & A $44,100 to be repaid in installments under the terms of a promissory note executed by the president and vice-president of Y & A, Sino J. Ave'la and William W. Yates III. The reverse side of the note contained a paragraph for its guarantee which was signed by Avella, Yates and Peter Jantzen; the parties agree that it constitutes a valid personal guarantee of the note.

The loan was secured by collateral in the form of a 1972 GMC tractor and a 1974 Ford tractor. However, shortly after the execution of the note the Ford tractor was stolen. As a result, on October 29, 1977, Jantzen entered into a written modification of the guarantee with the Bank pursuant to which, in exchange for the Bank's release of the title to the Ford tractor, Jantzen would pay $10,000 from the insurance proceeds and supply substitute collateral with a value in excess of $6,500.

On December 1, 1977, Jantzen delivered to the Bank, as substitute collateral, a motor vehicle title for a 1970 Hendrickson tractor. That title had been issued to John Cremin and Kathleen Cremin (not parties to this litigation), but carried only the unnotarized endorsement of John Cremin. On December 10, 1977, the Bank returned the title to the Cremins requesting that Kathleen Cremin endorse the title, notarize both signatures and return it to the Bank. At no time did the Bank advise Jantzen of its dissatisfaction with the state of the title nor did it notify him that the title had been returned to the Cremins. Nor did the Bank take any steps to insure the return of the title to it and it never was returned. In 1980, the Hendrickson tractor was also stolen, and John Cremin received $7,500 from his insurance company.

In April 1979, Y & A ceased making payments on the note and this litigation was commenced on February 25, 1981. Initially, Jantzen and International moved for summary judgment contending that the Bank's release of the 1970 Hendrickson title to the Cremins was an impairment of collateral which discharged defendants from their obligation under the guarantee. The motion was supported by the affidavits of Jantzen and John Cremin which set forth the foregoing facts and further alleged that the value of the Hendrickson tractor at the time title was delivered to the Bank was $11,300. The Bank filed no response or counteraffidavit. The motion was denied.

Subsequently, the Bank filed a motion for summary judgment as to defendants' liability under the guarantee on the note which was

granted and judgment entered against defendants for principal and interest ($18,146.52); attorney fees ($4,202); and court costs ($568.60) in the total amount of $22,917.12. On appeal, Jantzen and International contend that the trial court erred in entering summary judgment for the bank and in denying defendants' motion for summary judgment. In the alternative, defendants contend the court erred by failing to offset the lost collateral against damages.

■ Initially, we note that section 57 of the Civil Practice Act (now codified as section 2—1005 of the Code of Civil Procedure) (Ill. Rev. Stat. 1979, ch. 110, par. 57) provides that either plaintiff or defendant may move, with or without supporting affidavits, for summary judgment and the opposite party may file counteraffidavits. If the pleadings, depositions, affidavits, exhibits and admissions on file then show there are no remaining genuine issues of material fact, the moving party is entitled to summary judgment as a matter of law. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 575, 442 N.E.2d 648, 653; *Smith v. St. Therese Hospital* (1982), 106 Ill. App. 3d 268, 270, 435 N.E.2d 939, 940.) Summary judgment is a drastic remedy and is to be awarded with caution; only if the right of the movant is clear and free from doubt may it be granted. *Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 575, 442 N.E.2d 648, 653; *In re Estate of Tomaso* (1980), 82 Ill. App. 3d 286, 288, 402 N.E.2d 702, 704-05; *Indiana Harbor Belt R.R. Co. v. Budd Co.* (1980), 87 Ill. App. 3d 91, 94, 408 N.E.2d 944, 947.

■ It is apparent that the promissory note at issue is a negotiable instrument for purposes of the Uniform Commercial Code (UCC). (Ill. Rev. Stat. 1981, ch. 26, par. 3—104; *Farmers State Bank v. Doering* (1980), 80 Ill. App. 3d 959, 962, 400 N.E.2d 705, 707-08, *appeal denied* (1980), 81 Ill. 2d 584.) The UCC states that a guarantor to an instrument is included within the term "surety" and thus for purposes of the UCC it is ordinarily immaterial whether a person is a true surety, an absolute guarantor or a conditional guarantor. (Ill. Rev. Stat. 1981, ch. 26, par. 1—201(40); 1 Anderson, Uniform Commercial Code sec. 1—201:128, at 157 (2d ed. 1970).) In order to establish a guarantee contract, the guarantor need not receive separate or additional consideration since he is bound by the consideration moving to the primary obligor. Ill. Rev. Stat. 1981, ch. 26, par. 3—415; *Burke v. Burke* (1980), 89 Ill. App. 3d 826, 829-30, 412 N.E.2d 204, 207-08; *Continental National Bank v. Schiller* (1980), 89 Ill. App. 3d 216, 219, 411 N.E.2d 593, 596.

■ However, once a contract of guarantee has been established it

imports good faith and confidence between the parties with respect to the whole transaction (*St. Charles National Bank v. Ford* (1976), 39 Ill. App. 3d 291, 295-96, 349 N.E.2d 430, 434, *appeal denied* (1976), 63 Ill. 2d 563; *Watkins Products, Inc. v. Walter* (1973), 11 Ill. App. 3d 417, 420, 296 N.E.2d 859, 861) and the terms of the contract will be strictly construed in favor of the guarantor since the guarantor has the right to stand upon the strict terms of his obligation. (*Newberry Theatre, Inc. v. SBB Theatre, Inc.* (1981), 96 Ill. App. 3d 928, 930, 422 N.E.2d 152, 153, *appeal denied* (1981), 85 Ill. 2d 567; *Harris Trust & Savings Bank v. Stephans* (1981), 97 Ill. App. 3d 683, 686, 422 N.E.2d 1136, 1140-41.) Accordingly, any action taken by a creditor without the guarantor's consent which varies the terms of the principal obligation, increases the guarantor's risk or deprives the guarantor of the opportunity to protect himself will result in a discharge *pro tanto* of the guarantor from his obligation. *Grundy County National Bank v. Cavanaugh* (1982), 105 Ill. App. 3d 718, 721, 434 N.E.2d 803, 806, *appeal denied* (1982), 91 Ill. 2d 569; *Watkins Products, Inc. v. Walter* (1973), 11 Ill. App. 3d 417, 420, 296 N.E.2d 895, 861.

■ When a note is secured by collateral, as in this case, the holder of the note will discharge a guarantor of the instrument to the extent that, without the guarantor's consent, the holder "unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." (Ill. Rev. Stat. 1981, ch. 26, par. 3—606(1)(b); *Chicago Bridge & Iron Co. v. Reliance Insurance Co.* (1970), 46 Ill. 2d 522, 526, 264 N.E.2d 134, 136; *Watkins Products, Inc. v. Walter* (1973), 11 Ill. App. 3d 417, 420, 296 N.E.2d 859, 861-62.) To determine whether a holder's actions in dealing with collateral may be "unjustifiable," one must consider section 9—207 of the UCC, which defines the rights and duties of a secured party in possession of collateral. (Ill. Ann. Stat., ch. 26, par. 3—606, Uniform Commercial Code Comment, at 412 (Smith-Hurd 1982 Supp.); *Shaffer v. Davidson* (Wyo. 1968), 445 P.2d 13, 15.) A secured party holds collateral for the benefit of guarantors and sureties and "must use reasonable care in the custody and preservation of collateral in his possession." (Ill. Rev. Stat. 1981, ch. 26, par. 9—207(1); *North Bank v. Circle Investment Co.* (1982), 104 Ill. App. 3d 363, 369-70, 432 N.E.2d 1004, 1007-08, *appeal denied* (1982), 91 Ill. 2d 560; *Wohlhuter v. St. Charles Lumber & Fuel Co.* (1975), 25 Ill. App. 3d 812, 815-16, 323 N.E.2d 134, 138, *aff'd* (1975), 62 Ill. 2d 16, 338 N.E.2d 179; *Brown v. State Farm Fire & Casualty Corp.* (1975), 33 Ill. App. 3d 889, 893-94, 338 N.E.2d 427, 430.) When a secured party

impairs collateral which materially prejudices a guarantor's rights, the guarantor need not show injury to be discharged from his obligation. *Watkins Products, Inc. v. Walter* (1973), 11 Ill. App. 3d 417, 420, 296 N.E.2d 859, 861; *Passman v. Budnizky* (1936), 284 Ill. App. 533, 541-42, 1 N.E.2d 707, 710.

■ Under these criteria, it has been held that the failure of a secured party to perfect its security interest in collateral will discharge a guarantor to the extent the secured party's lien is subordinated to that of a third party. (*North Bank v. Circle Investment Co.* (1982), 104 Ill. App. 3d 363, 369-70, 432 N.E.2d 1004, 1007-08, *appeal denied* (1982), 91 Ill. 2d 560; *Wohlhuter v. St. Charles Lumber & Fuel Co.* (1975), 25 Ill. App. 3d 812, 817, 323 N.E.2d 134, 138, *aff'd* (1975), 62 Ill. 2d 16, 338 N.E.2d 179; *First Bank & Trust Co. v. Post* (1973), 10 Ill. App. 3d 127, 132, 293 N.E.2d 907, 910-11.) Also, if a secured party releases collateral without the consent of the guarantor, the guarantor will be discharged *pro tanto* from his obligation. *Chicago Bridge & Iron Co. v. Reliance Insurance Co.* (1970), 46 Ill. 2d 522, 526, 264 N.E.2d 134, 136; *Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 149, 412 N.E.2d 1131, 1138; *Key Credit Corp. v. Young* (1970), 124 Ill. App. 2d 309, 316-17, 260 N.E.2d 488, 491-92.

■ We conclude that the Bank's return of the Hendrickson title to the Cremins without the consent of Jantzen and without causing its return was an unjustified impairment of the collateral resulting in a discharge *pro tanto* of Jantzen's obligation as guarantor. At the time Jantzen delivered the title to the Bank there was a contract of guarantee between Jantzen and the Bank. As a result, Jantzen had a right to expect the Bank to behave with at least a minimal degree of commercial reasonableness and care to secure the collateral. (*North Bank v. Circle Investment Co.* (1982), 104 Ill. App. 3d 363, 370, 432 N.E.2d 1004, 1008-09, *appeal denied* (1982), 91 Ill. 2d 560.) The Bank also had a duty in the spirit of good faith and fair dealing to inform Jantzen of circumstances which materially increase his risk as guarantor. (*St. Charles National Bank v. Ford* (1976), 39 Ill. App. 3d 291, 295, 349 N.E.2d 430, 434, *appeal denied* (1976), 63 Ill. 2d 563.) The Bank's unequivocal release of the title to a third party with whom it had no contractual relationship or expectation of cooperation and without notice to or consent from Jantzen cannot, in our view, be deemed commercially reasonable. This is true notwithstanding that the Bank's motivation for releasing the title may have been to improve its secured position. (See *Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 150-51, 412 N.E.2d 1131, 1139.) As a result, Jantzen is discharged from his obligation as guarantor to the extent of the value of

the collateral released.

■ The Bank contends, however, that it should not be held accountable for the collateral since it never, in fact, held the collateral. The Bank argues that since the title to the Hendrickson tractor contained only the unnotarized signature of John Cremin, there was no valid transfer of title pursuant to the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, pars. 1—100 *et seq.*), and it should not be held liable for the release of the title. This argument misconstrues the relationship between the Illinois Vehicle Code and the UCC. While section 3—302 of the Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 3—202) provides the exclusive means of perfecting a security interest in a motor vehicle, the Vehicle Code does not purport to control the creation of a security interest in a vehicle nor the legal ramifications flowing therefrom since that is covered exclusively by article 9 of the UCC. (*Huber Pontiac, Inc. v. Wells* (1978), 59 Ill. App. 3d 14, 17, 375 N.E.2d 149, 152; *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379, 382, 350 N.E.2d 356, 359-60.) The Bank erroneously assumes that title to collateral is required in order to create a valid security interest. Such is not the case. (Ill. Rev. Stat. 1981, ch. 26, par. 9—202; *Blackhawk Heating & Plumbing Co. v. Geeslin* (7th Cir. 1976), 530 F.2d 154.) The fact that the Bank did not have both owners' signatures on the title did not relieve it of its obligations to the guarantor.

Accordingly, the orders granting the summary judgment motion of the Bank and denying defendants' motion for summary judgment are reversed. We remand with directions that summary judgment be entered in favor of defendants under their motion and that in entering the judgment under the guarantee the value of the lost collateral be credited to defendants against the principal balance due to the Bank on the note. See *Shaffer v. Davidson* (Wyo. 1968), 445 P.2d 13.

Reversed and remanded with directions.

HOPF and VAN DEUSEN, JJ., concur.