**BOULEVARD BANK NATIONAL ASSOCIATION, Plaintiff,**

v.

**PHILIPS MEDICAL SYSTEMS INTERNATIONAL B.V., a Netherlands corporation, and N.V. Philips' Gloeilampenfabrieken, a Netherlands corporation, Defendants.**

No. 91 C 4557.

United States District Court, N.D. Illinois, E.D.

Jan. 12, 1993.

Robert J. Rubin, Darren B. Watts, Altheimer & Gray, Chicago, IL, for defendants.

Frederic R. Klein, Steven A. Levy, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for plaintiff.

## ORDER

NORGLE, District Judge.

Before the court are plaintiff's and defendants' cross-motions for summary judgment. For the reasons stated below, the plaintiff's motion is granted and the defendants' motion is denied.

## FACTS

In October, 1988, High Tech Medical Parks Development Corporation ("High Tech"), a developer of outpatient care services in South America, contacted the plaintiff, Boulevard Bank National Association ("Boulevard"), for the purpose of financing the purchase of a Magnetic Resonance Imaging ("MRI") system from defendant Philips Medical Systems International B.V. ("Philips"). Boulevard agreed to loan High Tech $1.4 million to purchase an MRI, which would subsequently be leased to a Chilean affiliate of High Tech. The financing was to be guaranteed by Philips, and Philips, reciprocally, would receive a pledge of the MRI and an assignment of lease payments. The Philips guarantee, in turn, would be fully backed by Philips' parent corporation, defendant N.V. Philips ("NVP").

On July 6, 1989, the documentation for the $1.4 million financing was complete: High Tech executed and delivered to Boulevard a document entitled "Promissory Note Fixed Maturity" (the "Note") in the principal amount of $1.4 million, and Philips and NVP delivered their respective guaranties to Boulevard (the "Guaranty" and the "Super Guaranty," respectively, collectively referred to as the "Guaranties").[1] On July 12, 1989, Boulevard funded $1,115,000 of the $1.4 million loan, wiring $1,079,017.5 of that amount directly to a joint bank account held by High Tech and Philips. The balance of the loan was funded by September 18, 1989.

Pursuant to the terms of the Note, High Tech was required to make ten payments of principal and interest on the fifteenth day of March and November, commencing November 15, 1990. Shortly before the May 15, 1991 payment date, High Tech notified Boulevard that it would be unable to make its scheduled $140,000 principal payment. In an attempt to avoid defaulting on the Note, High Tech proposed restructuring the loan, requesting a monthly rather than semiannual payment plan. High Tech's proposal, however, was never formally adopted, and High Tech defaulted on May 15, 1991. By letter dated May 20, 1991, Boulevard notified High Tech that the $1.4 million loan was in default and demanded that High Tech pay the outstanding balance due as of that date. On May 22, 1991, Boulevard sent to Philips, by telefacsimile and by overnight courier, a copy of a letter (the "Demand Letter") that explained High Tech's default and requested that Philips pay Boulevard in accordance with the terms of the Guaranty.

On September 27, 1991, Boulevard obtained a final judgment against High Tech in the amount outstanding on the Note plus a per diem interest charge. As of September 30, 1992, the principal amount due and owing under the $1.4 million loan was $985,998.79, and the interest accrued on the unpaid principal is currently in excess of $20,000.

Boulevard has filed a complaint against Philips and NVP seeking to recover the outstanding principal and interest on the Note under the Guaranties. Philips and NVP answered the complaint by denying the allegations contained therein and by asserting six affirmative defenses. The parties have subsequently filed the instant cross-motions for summary judgment, each claiming that the undisputed facts in this case require the granting of summary judgment in its favor.

---

1. Philips had previously sent the executed Guaranties to High Tech with the instruction to turn the originals over to Boulevard.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Moreover, to preclude summary judgment, the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi LeIsrael, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

In its motion for summary judgment, Boulevard asserts that the matter *sub judice* is essentially a straightforward action to collect on a relatively simple guaranty agreement. The defendants have responded to Boulevard's assertions by raising several defenses to the Guaranties which would render the Guaranties unenforceable and would permit the granting of summary judgment in their favor. Both parties agree that the elements of Boulevard's claim, the interpretation of the Guaranties, and the applicable defenses to the Guaranties are governed by Illinois law.

■ Under Illinois law, a prima facie case for the enforcement of a guaranty is established "when the plaintiff enters proof of the original indebtedness, the debtor's default and the guarantee." *Mid–City Indus. Supply Co. v. Horowitz*, 132 Ill.App.3d 476, 483, 87 Ill.Dec. 279, 285, 476 N.E.2d 1271, 1277 (1985). The parties have agreed to the existence of these elements; thus, Boulevard is entitled to judgment on the Guaranty unless the defendants' affirmative defenses are valid, in which case summary judgment in their favor is appropriate.

With regard to the manner in which the Guaranties are to be interpreted, both parties have devoted a small forest's worth of paper to the argument of "strict construction." The defendants claim that since "the guarantor is a favorite of the law," *Irving Tanning Co. v. American Classic, Inc.*, 736 F.Supp. 161, 163 (N.D.Ill.1990), the Guaranty[2] must be strictly construed in favor of Philips. Boulevard, conversely, argues that since Philips is a guarantor for consideration, the Guaranty must be construed against Philips. *See e.g., Fisher v. Fidelity & Deposit Co. of Md.*, 125 Ill. App.3d 632, 80 Ill.Dec. 880, 466 N.E.2d 332 (1984) (compensated surety's contract construed against surety). Despite the persuasive efforts of both parties, neither of the contrasting construction arguments are applicable to the Guaranty.

---

**2.** The defendants' motion is limited to defenses pertaining to the Guaranty and not the Super Guaranty, presumably on the theory that NVP would not be liable on the Super Guaranty if no liability exists under the Guaranty. However, to the extent the defendants have failed to rebut Boulevard's attack on NVP's affirmative defenses, those defenses are deemed abandoned and fail as a matter of law.

■ A court must apply rules of construction when the language of a guaranty is ambiguous. In their respective construction arguments, the parties have focussed on the fact that the Guaranty does not include the "Exhibit A" mentioned therein. The fact that "Exhibit A" does not exist as an attachment to the Guaranty does not necessarily render the Guaranty ambiguous, and neither party has asserted that any terms in the Guaranty are subject to interpretations other than their natural and ordinary meanings.[3] What constitutes "Exhibit A" is not a matter subject to legal construction, but is a matter of fact to be supported or disputed with pleadings, depositions, affidavits, answers to interrogatories and admissions. Accordingly, the court will not subject the Guaranty to either party's proposed rules of construction, but will interpret the Guaranty as written so as to effectuate the intent of the parties.

With regard to the omission of "Exhibit A," the defendants present several arguments regarding the intended interpretation of the Guaranty. In this regard, the defendants' arguments pertain to the first sentence of the Guaranty, which states:

"[Philips], taking into consideration that [Boulevard] is granting credit facilities to [High Tech] up to a maximum of [$1,4000,000] against the conditions as agreed between [Boulevard] and [High Tech] *(set forth in Exhibit A)* and agreed and acknowledged to by [Philips], hereby guarantees. . . ." (emphasis added).

According to the defendants, "Exhibit A" was not attached at the time the Guaranty was executed. Based on this claim, the defendants have raised three arguments in support of their motion.

The first of the defendants' "Exhibit A" arguments is that a material issue of fact exists as to whether "Exhibit A" was a document dated March 27, 1989, setting forth the terms of the financing (the "Commitment Letter") or the Note. According to the defendants, during the entirety of this litigation, Boulevard had taken the position that the Note constituted "Exhibit A." In support of their position, the defendants cite Boulevard's complaint, which states "[o]n or about June 6, 1989, [Philips] signed the [Guaranty] agreeing to guarantee the Note." Defendants also rely on the fact that Exhibit A to Boulevard's complaint is a copy of the Note. Despite the defendants' assertions, the statements made by Boulevard in its complaint cannot be interpreted to mean that "Exhibit A" was the Note. Boulevard's recital as to Philips guaranty of the Note is correct; the Note is merely evidence of High Tech's debt to Boulevard, which was to be guaranteed by Philips under the Guaranty. Furthermore, simply because two or more documents share the same label does not mean they are identical, and therefore defendants' argument that the "A" exhibit to the complaint must be "Exhibit A" is not convincing.

The defendants also contend that Boulevard affirmed its position that "Exhibit A" is the Note by submitting a copy of the Note to Philips after Philips requested a clarification of what constituted "Exhibit A." This argument, however, is not supported by the record. By letter dated May 24, 1991, Philips' counsel stated: "[i]t is presently unclear whether [Philips] ever was sent or received Exhibit A. In order to ascertain whether [Philips] received Exhibit A, please send me a photocopy of any evidence of this fact along with Exhibit A." The defendants, referring to the deposition of Boulevard's assistant vice president Angele K. DePew, next contend that Boulevard delivered a copy of the Note to Philips' counsel in response to the May 24 letter. The DePew deposition, however, explicitly states that the Note was delivered to Philips at the express direction of Philips' counsel. On the whole, the defendants have not presented any evidence, by affidavit or otherwise, that any of Boulevard's pleadings are inconsistent with the position expressed in its present motion

---

**3.** Additionally, neither Boulevard nor the defendants have identified any ambiguous terms or phrases with respect to any of the documents which have been presented to the court as potential "Exhibit A"s.

that the "Exhibit A" to the Guaranty is the Commitment Letter.

■ Regardless of whether "Exhibit A" was to be the Note or the Commitment Letter, defendants' claim, as a second "Exhibit A" defense, that the failure to attach the exhibit prevented Philips from agreeing to a material term of the Guaranty is unfounded. The omission of an exhibit or attachment from a contract does not render the contract invalid if the party bound by such contract has actual knowledge of the content of such exhibit. *Burns v. Ford Motor Co.*, 29 Ill.App.3d 585, 331 N.E.2d 325 (1974). As set forth in the Guaranty, "Exhibit A" specifies the conditions under which Boulevard is making the loan to High Tech. The Commitment letter, which Philips possessed more than two months prior its execution of the Guaranty, stated that the loan to High Tech would be subject to the terms and conditions set forth therein. Thus, Philips was aware that a $1.4 million loan was to be made by Boulevard to High Tech at the prime rate, maturing in five years and ten months, with only interest payable for the first ten months, and equal payments of $140,000 principal plus interest payable semi-annually thereafter. Because Philips was aware that these were the conditions under which Boulevard would make its loan, and since, in fact, these are the conditions contained in the Note, Philips cannot now claim that the Guaranty is invalid because the exhibit which would have reiterated these terms was erroneously omitted.

The defendants contend, however, that the Note did not embody all the material terms of the Commitment Letter. The Commitment letter included a provision stating the following: "A Key man life insurance policy will be purchased by [High Tech] for Dr. Martin E. Bruetman naming [Boulevard] as beneficiary. The total amount of coverage shall not be less than

the outstanding loan balance." Specifically, the defendants claim, as their third "Exhibit A" defense, that the "Key–Man" life insurance provision of the Commitment Letter was deleted after the Guaranty was executed, which materially increased Philips' risk under the Guaranty and deprived Philips of the opportunity to protect itself.

■ Under Illinois law, once a creditor and guarantor form a guaranty contract, any agreement between the debtor and creditor which "varies the terms of the principal obligation, increases the guarantor's risk or deprives the guarantor of the opportunity to protect himself will result in a discharge *pro tanto* of the guarantor from his obligation." *McHenry State Bank v. Y & A Trucking*, 117 Ill.App.3d 629, 633, 73 Ill.Dec. 485, 488, 454 N.E.2d 345, 348 (1983). "If the creditor takes any action which 'increases the guarantor's risk or deprives the guarantor of the opportunity to protect himself,' the guarantor should be released from the guaranty *to the extent of his injury*." *Continental Bank N.A. v. Everett*, 760 F.Supp. 713, 717 (N.D.Ill.1991) (emphasis added) (citing *McHenry State Bank*).

■ Boulevard does not deny that the "Key–Man" life insurance provision of the Commitment Letter was not incorporated into the terms of the Note.[4] Thus, to the extent the deletion of the "Key–Man" provision was a material alteration of the loan agreement,[5] the defendants are discharged of their guaranty obligation to the extent of the injury caused by that deletion. As an initial matter, the defendants do not claim that Bruetman died during the term of the Note. Furthermore, the "Key–Man" insurance provision was intended to benefit Boulevard, not the guarantors. Although, if "Key–Man" insurance coverage had been obtained, High Tech's debt to Boulevard may have been discharged if Bruetman had

---

**4.** Boulevard's statement of facts indicates that on or about July 6, 1989, Dr. Bruetman, chairman and chief executive officer of High Tech, and Elizabeth Davidson, a commercial banking representative of Boulevard, agreed to waive the "Key–Man" insurance requirement specified in the Commitment Letter.

**5.** Curiously, although Philips now contends that "Key–Man" life insurance coverage was "a material part of the overall loan transaction," it neither requested evidence of such insurance coverage prior to delivering the Guaranty to Boulevard nor at any time thereafter.

died, the defendants would still have been liable for any deficiency between the insurance proceeds and the outstanding principal and interest on the Note. Since the Guaranty has been triggered by High Tech's default and not the death of Bruetman, the defendants have not suffered any injury by the deletion of the "Key–Man" insurance requirement. Accordingly, under *McHenry State Bank,* Philips is not discharged from any of its obligations under the Guaranty.

In short, none of the defendants' "Exhibit A" arguments are sufficient defenses to the enforcement of the Guaranty. The court finds it ironic that Philips knowingly executed a guaranty that was missing an exhibit and now attempts to use the absence of that exhibit as a defense to the enforcement of the Guaranty. Furthermore, the terms of the Guaranty are clear and unequivocal; the information that was to have been presented in the missing exhibit did not pertain to the guaranty, but to the underlying loan. Aside from understanding that "Exhibit A" was to embody the terms of the loan agreement, the defendants have not presented any evidence indicating that they knew or anticipated specifically what document was to constitute "Exhibit A." Such ambivalence cannot be used as a defense to prevent the enforcement of a guaranty against its signatories. Boulevard, on the other hand, has conclusively demonstrated that the intended "Exhibit A" was the Commitment Letter, the content of which Philips was aware and which was eventually embodied in all material respects in the Note. Accordingly, the defendants "Exhibit A" defenses fail.

 In addition to their "Exhibit A" arguments, the defendants have asserted several other defenses to the enforcement of the Guaranty. One of these other defenses is that Boulevard restructured the repayment terms of the loan without Philips' approval. In the Spring of 1991, High Tech sought to restructure the loan so as to permit monthly payments of $35,000, as opposed to the original terms requiring semi-annual payments of $140,000. On May 13, 1991, Boulevard sent Philips a letter informing Philips of High Tech's proposed loan restructuring. Philips draws the court's attention to the initial sentence of this letter, which states: "[t]his letter is to notify [Philips], as Guarantor, that [Boulevard] *has agreed* to restructure the repayment terms of [High Tech]'s term loan...." (emphasis added). The defendants contend that Boulevard agreed to the restructuring and accepted payments thereunder, thereby discharging Philips and NVP from the obligations imposed by the Guaranties.

While the first sentence of the May 13 letter to Philips stated that Boulevard had agreed to the restructuring, the letter goes on to state that the new payment scheme was contingent upon Philips' affirmance of the change and its continued presence as a guarantor. Although the defendants assert that Boulevard and High Tech entered into an agreement regarding the restructuring, there is no evidence that a binding agreement was entered into between these parties. In fact, Boulevard has submitted substantial evidence contrary to the defendants' position.

After Philips failed to affirm the restructuring, Boulevard delivered a letter to High Tech, with copies addressed to Philips and Philips' counsel, stating: "[Boulevard]'s willingness to accept the revised payment schedule was expressly subject to the acceptance of such modification by [Philips], a guarantor of the loan. Such consent has not been forthcoming. Accordingly, [Boulevard] is currently not prepared to accept the proposed restructuring plan." Additionally, after Boulevard had declared the loan in default, it sent a letter to High Tech, again copying Philips and Philips' counsel, stating: "[a]s you know, we could not proceed with your proposed payment restructure for the [loan] since [Philips] refused to provide its consent to this restructure." Finally, although Boulevard has accepted several monthly payments from High Tech in the amount that had been proposed for the restructuring, Boulevard has also obtained a stipulated judgment against High Tech for all amounts due under the loan. Boulevard's letters to High Tech, together with the judgment it

received against High Tech, demonstrate that no agreement to restructure the loan was ever entered into by Boulevard and High Tech.[6] Accordingly, the defendants' allegations of a restructuring agreement fail as a defense against Boulevard's motion for summary judgment.

An alternative argument presented as a defense to Boulevard's motion for summary judgment is the claim that Boulevard materially increased Philips' risk under the Guaranty by extending additional credit facilities to High Tech. According to the defendants, subsequent to the execution of the Guaranty, Boulevard extended a line of credit and issued various letters of credit to High Tech. The defendants contend that the extension of additional credit to High Tech violated the Guaranty, which provided in part that Boulevard was granting "up to a maximum of [$1,400,000]" in credit facilities.

As a factual matter, the defendants' allegations that Boulevard extended additional credit facilities after the Guaranty was executed is not supported by the record. Defendants have only shown is that an existing credit line was extended after the Guaranty's execution. Thus, the defendants will be released from their respective obligations under the Guaranties only to the extent Boulevard violated the Guaranty by extending existing credit facilities to High Tech.

■ In general, the specification of a maximum principal amount in a guaranty agreement merely indicates a limitation of the guarantor's liability, and not a limitation on the amount of credit that may be extended to the principal debtor. *McLean County Bank v. Brokaw*, 119 Ill.2d 405, 412, 116 Ill.Dec. 561, 564, 519 N.E.2d 453, 456 (1988). In addressing the question of whether a guarantor is discharged from liability on the ground that the creditor loaned the principal debtor more than the

guarantors guaranteed, the *McLean County Bank* court stated:

"In the absence of an expressed intention in the contract that the maximum amount of credit specified is to be a limitation on the amount of credit to be extended and an absolute condition of the guarantor's undertaking, the extension of credit beyond that amount does not discharge or release the guarantor of liability on the specified amount. This has been recognized in [Illinois] for nearly a century, and the holding has been consistently followed." *Id.* (citations omitted).

The principal amount stated in the Guaranty is a limitation on Philips' liability, since the Guaranty lacks an express provision that the $1.4 million specified was a limitation on the credit that could be extended to High Tech. *See also Union Carbide Corp. v. Katz*, 489 F.2d 1374 (7th Cir.1973) (applying Illinois law). Furthermore, the Guaranty expressly states that "the liability of [Philips] under this guaranty shall not exceed [$1,400,000] plus interest and costs." The inclusion of this provision would not be necessary if Boulevard were prohibited by the express terms of the Guaranty from lending more than the $1.4 million. *See In re Marriage of Arvin*, 184 Ill.App.3d 644, 133 Ill.Dec. 53, 56, 540 N.E.2d 919, 922 (1989) (Illinois courts will avoid the interpretation of a contract that will render some provisions superfluous).

When the Guaranty is read in its entirety, the reference to the "maximum of [$1,400,000]" cannot be interpreted to prohibit Boulevard from lending High Tech funds in excess of $1.4 million; the only reasonable interpretation of this clause is that Philips' maximum liability under the Guaranty was $1.4 million. Boulevard is not seeking to enforce the Guaranty against the defendants for any debt other than that represented by the Note, and the fact that Boulevard extended outstanding lines of credit to High Tech after the Guar-

---

6. As a matter of interest, the court notes that the defendants have not been harmed, nor has their risk under the Guaranties been increased, because Boulevard accepted monthly payments from High Tech subsequent to Boulevard's dec-

laration of default. To the contrary, the acceptance of High Tech's post-default payments has reduced the indebtedness now covered by the Guaranty.

anty had been executed has no effect upon Philips' liability under the Guaranty. Accordingly, Boulevard's extension of credit to High Tech was not a violation of the Guaranty, and the defendants' defense based on this ground therefore fails.

The defendants' final defense to the enforcement of the Guaranties is the argument that Boulevard improperly notified Philips of its demand for payment under the Guaranty. With regard to the manner in which demand was to be made, the second paragraph of the Guaranty states that Philips will make payments immediately upon Boulevard's "telex request." Additionally, the fourth paragraph of the Guaranty states that Philips will pay Boulevard "upon request of [Boulevard] the amount due," and the fifth paragraph states that Philips' obligations under the Guaranty "shall be due and payable to [Boulevard] upon its written or telex demand to [Philips]."

The defendants base their improper demand defense on the "telex request" language of the Guaranty's second paragraph.[7] Discounting the notice references in the fourth and fifth paragraphs as "other payment provisions," the defendants claim that the "telex request" was a condition precedent to payment under the Guaranty. Accordingly, since Philips never received any telex from Boulevard demanding payment, Philips obligation to pay was never triggered.

As with any contract, "obligations under a guarantee may be subject to conditions established by the parties." *Irving Tanning Co. v. American Classic, Inc.*, 736 F.Supp. 161, 163 (N.D.Ill.1990). Conditions precedent, however, are not favored by Illinois courts, and contracts will not be construed as having conditions precedent unless required to do so by plain, unambiguous language. *A.A. Conte v. Campbell–Lowrie–Lautermilch*, 132 Ill. App.3d 325, 87 Ill.Dec. 429, 432, 477 N.E.2d 30, 33 (1985); *accord Shackleton v. Food Mach. & Chem. Corp.*, 166 F.Supp. 636 (D.C.Ill.1958), *aff'd in part, rev'd in part*, 279 F.2d 919 (7th Cir.1960); *Department of Pub. Works and Bldgs. v. Porter*, 327 Ill. 28, 158 N.E. 366 (1927); 12A Ill.L. & Prac. Contracts § 227 (1983). Where the written terms of a contract are plain and unambiguous, the language of the instrument affords the sole criterion of the parties' intentions. *Althoff Ind., Inc. v. Elgin Med. Ctr., Inc.*, 95 Ill.App.3d 517, 520, 51 Ill.Dec. 386, 389, 420 N.E.2d 800, 803 (1981). With regard to the "telex request" language of the Guaranty, there is no intrinsic ambiguity—only the equivocal interpretation suggested by the defendants.

According to the defendants, the "telex request" language requires that the demand for payment under the Guaranty be made by telex and telex only.[8] However, despite the defendants' contentions, the common interpretation of this language is that Philips is required to fulfill its obligations under the Guaranty upon Boulevard's telex request for payment. There is no element of exclusivity embodied by this language, and in light of the Guaranty's reference to the generic term "request" and the phrase "written or telex demand," the argument that Philips was not required to comply with its obligations under the Guaranty unless it received a demand by telex, and by telex only, is absurd.

Although the defendants argue to the contrary, the contention that a telex request was the only method by which the Guaranty could be effectuated exalts form over substance. Where a party claims that an interpretation not evidenced by the plain

---

7. "Telex" is defined by Webster's as "a two-way teleprinter service channeled through a public telecommunications system for instantaneous, direct communication between private subscribers at remote locations." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 1460 (1989) (capitalized in definition).

8. According to the defendants, Philips has a policy of requesting telex notices because "a telex notice creates an original document." The defendants further state that a telefacsimile transmission "merely creates a photocopy of an original." The defendants' brief explanation in support of its position fails to detail the manner in which a document generated by a telex machine, which bears no letterhead or signature, is more original than a copy of an executed letter on company letterhead.

meaning of the language used constitutes a condition precedent to its performance, that party is not entitled to a favorable construction unless it is established that the parties intended to create such a condition at the time of contracting. *South Div. Credit Union v. Deluxe Motors, Inc.*, 42 Ill.App.3d 219, 222, 355 N.E.2d 715, 718 (1976). The defendants have not supported their position with any evidence indicating that the parties intended a telex request to be the sole method by which a demand could be effective. Furthermore, read in its entirety, the Guaranty indicates that alternate forms of demand were acceptable. Boulevard transmitted a telefacsimile request for payment on May 22, 1991, and conveyed by Federal Express a written demand for payment on that same date. Accordingly, Boulevard demanded payment from Philips in accordance with the Guaranty, and the defendants' defense that an improper demand was made fails.[9]

In spite of the defenses asserted by the defendants, the Guaranty and the Super Guaranty are clear and unambiguous promises to guaranty the monies that Boulevard lent to High Tech. Philips does not deny that it signed the Guaranty for the purpose of guarantying High Tech's debt. NVP does not deny that it signed the Super Guaranty for the purpose of supporting the Guaranty with its joint and several assumption of Philips' liability. Each of the defendants benefitted from the financing provided to High Tech by Boulevard, and for several years, each defendant acted as though a valid guaranty existed. It was not until Boulevard attempted to enforce the Guaranty that Philips began to scramble and manufacture the artificial defenses which it has presented to the court in an effort to avoid repaying the monies it not only guaranteed, but also received directly via the joint bank account maintained by Philips and High Tech.

The Guaranties are valid, and because the defendants have presented no legitimate defenses to the Guaranties' enforcement, the court grants Boulevard's motion for summary judgment against Philips and NVP, jointly and severally, for all amounts due under the Guaranty and the Super Guaranty, including the collection costs incurred by Boulevard in obtaining this judgment. According to Boulevard's statement of facts, submitted in accordance with Local Rule 12(m), Boulevard is entitled to the following damages: $985,998.79 in principal due under the Guaranty; $28,417.69 in interest due under the Guaranty as of November 25, 1992, plus interest which has accrued subsequent to that date; and collection costs which, through October 31, 1992, amount to $151,435.23. The defendants contest that the collection costs incurred by Boulevard are unreasonable; however, the defendants have not rebutted Boulevard's calculation with any factual support. Accordingly, pursuant to Local Rule 12(n), the facts stated in Boulevard's statement are deemed admitted. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101 (7th Cir.1990) (summary judgment appropriate where respondent failed to provide supporting materials for its Local Rule 12(n) denial that the legal fees being sought were unreasonable).

## CONCLUSION

For all the reasons set forth herein, the court grants Boulevard's motion for summary judgment in its entirety, and the De-

---

**9.** According to the defendants, Philips' counsel sent Boulevard a letter, which was received on May 24, 1991, revoking Philips' obligation under the Guaranty. The attempted revocation, made two days after Philips was notified of Boulevard's demand, approximates a violation of the implied covenant of good faith and fair dealing. Implicit in the Guaranty was an agreement that Philips would not attempt to terminate its promise to guaranty High Tech's debt if Boulevard sought enforcement of its terms. *New Horizons Electronic Marketing, Inc. v. Clarion Corp.*, 203

Ill.App.3d 332, 338, 149 Ill.Dec. 5, 8, 561 N.E.2d 283, 286 (1990) ("covenant of good faith read into contracts in order to protect the express covenants or promises of the contract"). Although the Guaranty could be revoked at any time, by its terms Philips would remain liable for any obligations outstanding on the revocation date. Because the court finds that Boulevard's May 22, 1991, demands for payment were in compliance with the terms of the Guaranty, the court does not need to address the defendants attempted revocation on May 24, 1991.

fendants' cross-motion for summary judgment is denied.

IT IS SO ORDERED.